UNITED STATES of America, Plaintiff,

v.

Maurice L. ZIEGLER, Defendant.

No. 91–40024–01–DES.

United States District Court,
D. Kansas.

Oct. 22, 1993.

Lee Thompson, U.S. Atty., D. Kan., Gregory G. Hough, Asst. U.S. Atty., Topeka, KS, for U.S.

Don W. Lill, Emporia, KS, Marilyn Trubey, Asst. Federal Public Defender, Topeka, KS, for Maurice L. Ziegler.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on remand for resentencing from the United States Court of Appeals for the Tenth Circuit. 1 F.3d 1044. After careful review of the case, the arguments and briefs of the attorneys, and the appellate decision, the court is prepared to proceed with resentencing.

At the original sentencing hearing, the court found 920 to be the appropriate number of marijuana plants for sentencing calculations. The Tenth Circuit did not address this issue and the court will not disturb its previous finding. Therefore, for resentencing purposes, the court uses 920 as the relevant number of plants.

■ In its examination of this court's decision to depart, the Tenth Circuit applied the three-step departure analysis explained in *United States v. White*, 893 F.2d 276, 278 (10th Cir.1990). At the first step, the Tenth Circuit concluded that "drug rehabilitation is taken into account for sentencing purposes under U.S.S.G. § 3E1.1 (1991) and, therefore, rehabilitation is generally an improper basis for departure." *United States v. Ziegler*, 1 F.3d 1044, 1047 (10th Cir.1993). This court readily acknowledges that the U.S. Sentencing Commission has taken drug rehabilitation into account in formulating the guidelines and, therefore, rehabilitation is generally an improper basis for departure.

Following its application of the three-step departure analysis, the Tenth Circuit specifically referred the court to the following admonition from *White:* "if the district court does not explicitly set forth the considerations that motivate its decision to depart ... from the Guidelines, we will not speculate as to what those considerations may have been." *White*, 893 F.2d at 278. In this resentencing order, the court will attempt to set forth more explicitly the considerations that motivated its decision to depart.

Before imposing a sentence, the court carefully evaluates the factors set forth in 18 U.S.C. § 3553. Among other things, the court considers the kinds of sentences available and the applicable sentencing range established by the sentencing guidelines.

When applying the sentencing guidelines, the court follows the general application principles of U.S.S.G. § 1B1.1. These application principles refer to Policy Statements pertaining to the Specific Offender Characteristics and Departures set forth in Parts H and K. During this process, the court evaluates whether there are grounds for departure, especially as set forth in U.S.S.G. § 5K2.0. Guideline § 5K2.0 provides that ·

> Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the courts.

In *United States v. Rivera*, 994 F.2d 942 (1st Cir.1993), the First Circuit explained that "(with a few exceptions) the law tells the judge, considering departure, to ask basically, 'Does this case fall within the 'heartland,' or is it an unusual case.'" *Rivera*, 994 F.2d at 948. When this court prepared for defendant Ziegler's sentencing, it concluded there were mitigating circumstances of a kind and to a degree not adequately taken into consideration by the Sentencing Commission. That is, the court concluded the instant case was atypical and fell outside the heartland.

On appeal, the Tenth Circuit instructed this court to explicitly set forth the considerations that motivated its decision to depart. The court intends, in this resentencing order, to satisfy the Tenth Circuit's request for elaboration. Accordingly, the court will attempt to set forth explicitly the considerations that motivated its decision to depart from the guidelines.

At the sentencing hearing the court believed post-rehabilitative efforts were a valid

consideration in applying the guideline for acceptance of responsibility. The Tenth Circuit noted that the 1992 version of the guidelines recognized this factor. In fact, the Application Notes specifically added that post-rehabilitative efforts (e.g., drug counseling and treatment) were appropriate considerations in determining whether a defendant qualifies for the adjustment. Additionally, the court notes that the most recent version of the guidelines allows for a three-level adjustment for cases having an offense level of 16 or greater and which meet certain additional requirements.

■ At the time of the sentencing, the court recognized that each guideline, including U.S.S.G. § 3E1.1, is set forth for typical cases. As the Introduction to the guidelines states in Part A, Section 4(b), "[t]he Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that *each guideline* describes." (Emphasis added). Accordingly, the guideline for acceptance of responsibility applies to the typical acceptance of responsibility cases, that is, the heartland acceptance of responsibility cases. When faced with defendant Ziegler's case, the court concluded that the nature and quality of defendant Ziegler's acceptance of responsibility was atypical, unusual, and outside the scope contemplated by the guideline.

■ The court based its conclusion on a close examination of the defendant's history and characteristics as required by 18 U.S.C. § 3553(a)(1). Guideline 1B1.4 specifically provides that the court may consider, without limitation, any information concerning the background, character, and conduct of the defendant in determining whether a departure is warranted, unless otherwise prohibited by law. Although certain characteristics are not ordinarily considered, the court is not prohibited from considering them in extraordinary cases.

■ In *Rivera*, the First Circuit explained that when considering a departure, the district courts are encouraged to consider certain features, discouraged to consider other features, and forbidden to consider still other features. *Rivera*, 994 F.2d at 948. In the instant case, the court believed there were certain features, which district courts ordinarily are discouraged to consider, that merited consideration due to the extraordinary nature of defendant Ziegler's situation. The court considered these features in applying the guideline for acceptance of responsibility, as it this guideline which is intimately connected to the character of the defendant. In applying this guideline, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." *See* Application Note 5 of U.S.S.G. § 3E1.1. Additionally, the Application Notes contain a non-exhaustive list of actions which, if taken by the defendant, demonstrate acceptance of responsibility. Because the list is non-exhaustive, the court considered several additional features unique to this case and this defendant.

When considering the character and circumstances of defendant Ziegler, the court noted the following. Defendant Ziegler has lived a stable life, having been born in a farmhouse in Morris County, Kansas, in 1950 and remaining a resident of Morris County, Kansas, until the time of sentencing. Additionally, he maintained a stable marriage, supporting three minor children, and developed substantial ties to his community. Further, he had no history of emotional or mental problems. His employment records are replete with positive comments from employers, such as the following:

[Ziegler] does what is needed to get the job done. He isn't late or dishonest and if he doesn't know, he learns quickly. I am well pleased with his workmanship and skills. I look forward to keeping him with my crew as a full partner. Paragraph 53 of the presentence report.

Maurice was always prepared for work, on time, good attendance, and very reliable-knowledgeable on the job. Has good customer relations. Paragraph 54 of the presentence report.

... he was very reliable, on time, good care of machinery, good with people he worked around. Maurice could be a good employee again any time if he is willing to travel again. Paragraph 55 of the presentence report.

Defendant Ziegler received the National Defense Medal for service in the U.S. Army and was honorably discharged. He owned property in his community, lived modestly, and had no previous arrests.

In addition to the above-mentioned characteristics, defendant Ziegler developed an extensive history of marijuana use. However, following his arrest, and when faced with the reality of his conduct, he not only accepted responsibility for his conduct but personally committed himself to drug rehabilitation and treatment. At sentencing, the court described what it considered, and still considers, to be the following noteworthy conduct:

> In the past, the defendant smoked approximately twenty marijuana cigarettes a day and had been using marijuana for almost twenty years. The court finds this is a significant substance abuse problem. When the defendant was released on bond after his initial arrest, he was referred to Recovery Road Treatment Center in Emporia, Kansas, for urinalysis surveillance and counseling. The defendant satisfactorily participated in counseling and became active in self-help groups. In addition, and perhaps most importantly, the defendant did not have any positive urinalysis tests for substance abuse.

> The court finds that these efforts by the defendant were unusual enough to merit departure. The court further finds that the defendant's presentence rehabilitative efforts and progress are significant, and far exceed ordinary expectations. Given the extent and duration of the defendant's abuse problem, the rehabilitation efforts are quite remarkable. The court also finds that his efforts exceeded the scope of presentence rehabilitation contemplated by the Sentencing Commissioners when they formulated guideline section 3E1.1, 'Acceptance of Responsibility.'

Although the court recognizes that drug rehabilitation is not generally a reason for departure, it believes that the nature and quality of defendant Ziegler's complete acceptance of responsibility, when observed from the court's unique vantage point, was of a kind, and to a degree, not adequately considered by the Sentencing Commission.

Thus, the court believed, and still believes, that the total acceptance of responsibility exhibited by defendant Ziegler poses a specific, unique, mitigating circumstance that justifies departure.

In selecting and imposing a sentence of 63 months, the court also considered the additional factors set forth in 18 U.S.C. § 3553. The sentence imposed on defendant Ziegler reflects a consideration of both the nature and the circumstances of the offense, as well as the personal history and characteristics of defendant. The sentence addresses the seriousness of the offense, promotes respect for the law, particularly in defendant's community of Council Grove, Kansas, and administers a punishment which the court believes is just. A 63-month sentence protects the community from future crimes by this defendant and deters others from engaging in similar conduct. Additionally, the court believes a 63-month sentence is an efficient use of a scarce resource, federal prison space. The court takes note of 28 U.S.C. § 994(g) which directs the Sentencing Commission to take into account the capacity of the penal facilities available. Specifically, § 994(g) directs that "[t]he sentencing guidelines prescribed under this chapter shall be formulated to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission." The court additionally notes that, according to the 1991 Federal Bureau of Prisons report, the prison population is 148 percent of capacity.

In conclusion, upon review of the three-step test used by the Tenth Circuit in analyzing departures, the court believes a departure is appropriate in this case and 63 months constitutes a fair and just sentence for defendant Ziegler. The Tenth Circuit admonished this court that when making a departure a district court must "explicitly set forth the considerations that motivate its decision." The court has attempted to set forth these considerations more explicitly. Specifically, the court believes the nature and quality of the complete acceptance of responsibility exhibited by defendant Ziegler, demonstrated by his extraordinary rehabilitation, and accentuated by his personal history and

character, constitutes a mitigating circumstance of a kind, and to a degree, not adequately considered by the Sentencing Commission. Therefore, the instant case is atypical and warrants departure. Furthermore, a 63–month sentence is appropriate and departure to 63 months is reasonable in light of the purposes of sentencing.

Consistent with the Tenth Circuit's directives, defendant Ziegler will be resentenced at 9:00 A.M. on November 8, 1993. At this time, and immediately prior to resentencing, each party will be given an opportunity to comment on the revised sentence.

**BY THE COURT IT IS SO ORDERED.**