**UNITED STATES of America, Plaintiff,**

v.

**Osaren EKHATOR, Defendant.**

**No. CR–92–343.**

United States District Court, E.D. New York.

May 25, 1994.

Julie E. Katzman, Asst. U.S. Atty., Brooklyn, NY, for plaintiff.

Harriet B. Rosen, New York City, for defendant.

*MEMORANDUM AND ORDER*

GLASSER, District Judge:

The defendant arrived at John F. Kennedy Airport on February 9, 1992 on a flight which originated in Lagos, Nigeria. She was carrying in her pocketbook slightly less than a kilogram of heroin which was 73% pure, together with $3,000 in U.S. currency. She was indicted and subsequently pleaded guilty pursuant to a plea agreement to a lesser included charge of knowingly and intentionally importing heroin into the United States, namely, 21 U.S.C. §§ 952(a) and 960(b)(3), which provided for a term of imprisonment of twenty years with no mandatory minimum.

The undisputed guideline range mandated by the United States Sentencing Guidelines ("U.S.S.G.") was 51–63 months. The defendant's plea agreement precluded her from moving for a downward departure from those guidelines. Recognizing the constraint of the plea agreement, the defendant did not move for a downward departure but submitted, instead, letters from the defendant and her relatives and friends, recounting the health problems of the children she left behind and the difficulties experienced by their custodians during her incarceration.

The defendant chose to make no statement about her offense to the probation officer during a presentence report interview. She claimed to be the owner of a supermarket in Nigeria and explained that she came to this country to purchase cosmetics for her store from an individual she did not know how to contact. She reported no assets or income either here or in Nigeria notwithstanding the $3,000 found in her purse. She stated she had a social security number which she needed as a prerequisite for transacting business in the United States, but a search for such a number by the Probation Department proved fruitless. She informed the probation officer that she had a bank account with the Union Bank in Dallas, Texas. An inquiry to that bank by the probation officer revealed that there was no account in the defendant's name and that the Union Bank is an investment bank for large companies and does not entertain individual accounts. Recalling that the defendant was arrested in February, 1992, passport records disclosed that since 1991 she had made four trips to the United States. The court could take judicial notice of the fact, if it were so inclined, that a round-trip flight from Nigeria to New York costs substantially more than a Staten Island ferry ride.

The defendant was sentenced on August 17, 1992 to the minimum prescribed by the U.S.S.G., 51 months. In response to the personal difficulties being experienced by the family she left behind and a request to consider those difficulties and impose the minimum possible sentence (which was done), the court also said:

I read all of the letters, Miss Ekhator. I received your letter and I received Mr. White's letter, and I received letters from a number of other people from your country.

I wish you had thought about all of this before you had decided to try and bring drugs into the country. I also wish that the law permitted me to do something, but it doesn't.

The defendant appealed her sentence, arguing that the court erroneously believed that it lacked authority to depart downward *sua sponte* on the basis of her family circumstances.

The Second Circuit decided that the statement "I ... wish that the law permitted me to do something, but it doesn't[,]" was ambiguous at best and appeared to reflect a mistaken belief that the court had no discretion to depart; the court vacated the sentence and remanded for re-sentencing "so that the court may determine and indicate on the record whether, and to what extent, it will exercise that authority." *United States v. Ekhator*, 17 F.3d 53, 56 (2d Cir.1994).

■ It is late in the day to recount the plethora of deficiencies in the guidelines and the layers of judicial gloss which have been placed upon those guidelines. Imposing a sentence of imprisonment which, in far too many cases, is draconian and irrational, is too serious and heart-wrenching a task to be enmeshed in a web of wordmanship.

The decision to vacate and remand the sentence is, by clear implication, bottomed upon the assumption that this district court which has been imposing sentences since the effective date of the U.S.S.G. on November 1, 1987, is still, six and one-half years later, unaware of the law. This is remarkable in light of *United States v. Handy*, 752 F.Supp. 561, 563–64 (E.D.N.Y.1990), cited in the Circuit Court's opinion, in which I wrote at some length on downward departure based upon extraordinary family circumstances, the very issue of which the Circuit Court here decided I may have been unaware. The Circuit Court in this case also cited *United States v. Jagmohan*, 909 F.2d 61 (2d Cir.1990), which affirmed my downward departure from the sentencing guidelines, and it could have cited too, *United States v. Lara*, 905 F.2d 599 (2d Cir.1990), which was another seminal case on downward departure emanating from this court. In addition to the assumption that this court is not aware of the law it is called upon to apply, the reference to its prior decisions on downward departures suggests that in imposing sentences this court is in a benign state of amnesia, totally oblivious to and unaware of its own decisions in particular, and to the law in general.

The patent assumption that United States district court judges are unaware of the law unless they explicitly manifest that they aren't by reciting, mantra-like, "I am aware of my discretion but choose not to exercise it," demeans the very serious process of sentencing and the judge who presides over it. It demeans the process by reducing it even further to the sterile ritual that sentencing guidelines have already made it.[1]

A comparison between this case and *United States v. Russell*, 870 F.2d 18 (1st Cir. 1989), is instructive. The issue there was essentially the same as here—an ambiguity in the district court's view of it own discretion. That court, however, resolved the problem in a significantly different manner. It said:

> *Our usual presumption, moreover, is that a district court is aware of the law that it is called upon to apply.* On the other hand, we recognize that the sentencing guidelines had only recently been introduced at the time of the hearing—July 1988—and that courts had had limited experience in their implementation.... Thus, wishing to be absolutely fair to defendant, we cannot dismiss the possibility, *remote though it may be*, that the district court underestimated its own power, if so moved, to depart from the guideline range....
>
> In light of this ambiguity, we feel that the best course is for us to retain appellate jurisdiction and to ask the district court for clarification of its own decision-making process.... If the district court informs us that it was aware of its discretion, but declined to exercise it, our intention is to affirm the sentence. If the court informs us that it was not then fully apprised of its discretion to depart as found in the guidelines, our intention is to vacate the sentence and remand for resentencing. In the latter event, the district court would be at liberty after reconsideration either to impose the same sentence or to alter it.

*Id.* at 20–21. (Emphasis added).

I have not mentioned the critical assessment of the presentence report which this

---

1. *Cf. United States v. Brady, et al.*, 26 F.3d 282 (2d Cir.1994) ("A trial judge is not required to mechanically recite his analysis of the admissibility of evidence under Rule 403.")

court made before imposing sentence upon the defendant. One might look askance at the defendant's explanation that a trip from Nigeria was made for the purpose of purchasing cosmetics for her supermarket from a seller she did not know how to contact.[2] One might look askance at protestations of economic hardship by one who had $3,000 in cash in her purse when arrested. One might look askance at protestations of economic hardship by one who has made four round-trips between Nigeria and New York in one year. One might be skeptical about a claimed social security number and a bank account, neither of which could be found, if they ever existed. One may, therefore, also look askance at assertions of suffering by children defendant claimed to have left behind to smuggle heroin into the United States.

Thus, "I wish that the law permitted me to do something, but it doesn't" was an evocation of the court's awareness of the Sentencing Commission's understanding that family hardship almost always follows in the wake of the arrest and conviction of a defendant[3] and that awareness, coupled with the court's evaluation of the presentence report made a downward departure unwarranted *under the law.*

I have made no mention of the human, economic and institutional cost in all this. The reality of the aftermath of the Circuit Court's decision is that the defendant had to be transported from the FCI in Lexington, Kentucky to New York by plane accompanied by a deputy marshal and a guard at a substantial cost to the Marshal Service. She will have to be returned to Lexington, Kentucky at a similar cost if she is fortunate enough to be returned by plane. During the interim between learning of the remand and her arrival in court she harbored the hopes that her sentence would be reduced. Her hopes would have been shattered by a reaffirmation of a sentence the Guidelines required because the court, acutely aware of and sensitive to its discretion as it always has been, could not, *under the law,* say that this case was outside the "heartland" or presented such mitigating circumstances as were not contemplated by the Sentencing Commission. I say "would have been" for the reasons which follow.

■ A problem which I suspect may not have been contemplated by the Court of Appeals, was created by its decision which said "we vacate the judgment and remand for resentencing, so that the court may determine and indicate on the record whether, and to what extent, it will exercise that authority. We of course express no view as to whether or not the court should exercise its discretion to grant a departure in this case." *Ekhator,* 17 F.3d at 56. And finally, "[t]he judgment is *vacated,* and the matter is *remanded* for further proceedings not inconsistent with the foregoing." *Id.* (Emphasis added). The problem presented was as to the nature of the proceeding before this court upon the defendant's return. Was the proceeding one for sentencing *de novo?* Was the proceeding one for the sole purpose of having the court indicate for the record that it was aware of its discretion to depart in an appropriate case, and was therefore not for a sentencing *de novo* but merely to clarify the record of the initial sentencing proceeding? *See United States v. Russell, supra.* The difference was vitally important here.

At the time the defendant was initially sentenced, her offense level was decreased by two levels for acceptance of responsibility in accordance with U.S.S.G. § 3E1.1, as it then provided. If the proceeding is one for a

---

**2.** The presentence report states that she owned a supermarket in Nigeria. After the sentence upon the remand and in response to a request from defense counsel, the Government forwarded copies of the defendant's passports, one of which expired, and the other being still current. It is interesting to note that in each passport she described her occupation as "dressmaker." In the section of each captioned "Children" to be listed by name, age and sex, there were no entries. The court placed no reliance upon those passports in re-sentencing the defendant for the obvious reason that they were not before the court at the time.

**3.** U.S.S.G. § 5H1.6 provides that "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be *outside the applicable guideline range.*" Given the court's evaluation of the presentence report, this section was particularly applicable.

sentencing *de novo*, then the court should grant the defendant's request for an offense level decrease of one additional level in accordance with U.S.S.G. § 3E1.1(b) currently in effect which provides for a *three* level decrease for acceptance of responsibility. 18 U.S.C. § 3553(a)(4) commands that sentences be imposed in accordance with the Guidelines that are in effect on the date the defendant is sentenced. Echoing that statute is the policy statement of U.S.S.G. § 1B1.11(a) that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." If the proceeding is one to clarify a sentence already imposed, the request should be denied because the amendment providing for a three level decrease for acceptance of responsibility is not retroactive. U.S.S.G. § 1B1.10.

The resolution of that problem is determined by the legal significance of the Circuit Court's order *vacating* the judgment and remanding for sentencing. In *United States v. Maldonado*, 996 F.2d 598 (2d Cir.1993), the court said, at page 599, "when a sentence has been vacated, the defendant is placed in the same position as if he had never been sentenced." Although that was said in connection with Rule 32, Fed.R.Crim.P., the court is not aware of any reason why vacating a sentence on any other ground should have a different legal significance. Research has not revealed any authority to the contrary. When, therefore, the defendant reappeared before the court on this vacated sentence with a "clean slate," *United States v. Barnes*, 948 F.2d 325, 330 (7th Cir.1991), 18 U.S.C. § 3553(a)(4) and § 1B1.11(a) required that her base offense level be reduced by one additional level and her guideline range reduced accordingly from 51–63 months to 46–57 months. Although the Court of Appeals said it expressed "no view as to whether or not the court should exercise its discretion to grant a departure in this case," *Ekhator*, 17 F.3d at 56, its decision had

the effect of compelling a decreased sentence.

It is of more than passing importance to note how the bloodless, mechanistic sentencing under the guidelines and the lives of defendants are affected by the use of words. For example, in *United States v. Ogbondah*, 16 F.3d 498 (2d Cir.1994), the issue before the court was precisely the same as it was in this case, namely, whether the district court understood that it had authority to downwardly depart. The concluding paragraph of the court's opinion in *Ogbondah* reads as follows:

> We remand to the district court to determine whether it understood its authority to depart on the requested grounds. "[I]f the district court did not realize that it had such discretion, then appellant should be resentenced in accordance with the court's proper recognition of the extent of its authority." ... We express no opinion as to the proper exercise of that discretion.[4]

*Id.* at 501 (citations omitted).

In *United States v. Sharpsteen*, 913 F.2d 59 (2d Cir.1990), which presented the identical issue as here, the court wrote as follows:

> In light of this ambiguity in the record, we believe that the best course is to remand this case to the district court for reconsideration of the sentence. In so doing we do not mean to suggest in any way that the district court erred in its denial of defendant's request for a downward departure. The only issue on remand is whether the district court recognized, in imposing a sentence of 30 months imprisonment, that it had the discretion to make a downward departure under the Guidelines. If upon reconsideration the district court decides that the answer to this question is affirmative, then the sentence should stand as originally imposed. On the other hand, if the district court did not realize that it had such discretion, then appellant should be resentenced in accordance with the court's

---

4. In that case too, the court made the observation that "[t]ypically, district judges do not routinely note their understanding of the scope of their authority to depart in response to an appeal for a downward departure." *Id.* at 501. That observation was repeated in *United States v. Schmick*, 21 F.3d 11 (2d Cir.1994), to which the court added: "We hold that absent some reason discernible on the record to believe that a district court had misgivings concerning its authority to depart downward on asserted grounds, *the court's failure to affirm its authority in declining to depart downward is not grounds for a remand.* (Emphasis added)."

proper recognition of the extent of its authority.

Appellant's conviction is affirmed, and the case is remanded to the district court for reconsideration of the sentence in accordance with this opinion.

*Id.* at 64.

*United States v. Ritchey,* 949 F.2d 61 (2d Cir.1991), in deciding the same issue, concluded by saying:

Under the circumstances, it seems advisable to remand for sentence reconsideration, not because the sentence was in error, but simply to make certain that the sentencing court understood it had the discretion to depart downward in this case, were it so advised. The only question to be resolved on remand is whether the sentencing court knew it had authority to downwardly depart in this case; if it did, then the sentence imposed should stand. If the district court was not aware it had such authority, however, then appellant should be resentenced in light of the proper recognition of its authority. *See Sharpsteen,* 913 F.2d at 64.

The matter is remanded to the district court for further proceedings in accordance with this *per curiam.*

*Id.* at 63.

█ In each of those cases, does the defendant appear before the court with a clean slate? Would she be entitled to the additional one level decrease on the facts of this case? The answer to each question is clearly "no" as *Sharpsteen* and *Ogbondah* make abundantly clear. The sentences not having been vacated, the defendant's presence before the court on remand is not for sentencing *de novo* and an additional decrease in the offense level would not be required.

█ Compare, however, *United States v. Califano,* 978 F.2d 65 (2d Cir.1992), in which the issue before the Court was also precisely the same as it was in this case, namely,

whether the district court understood that it had authority to downwardly depart and the Court in that case decided that the defendant's sentence should be *vacated and remanded* for resentencing so that the district judge could indicate on the record "whether, and to what extent, he will exercise that authority." *Id.* at 66 (citation omitted). The duration of a defendant's incarceration surely should not be determined by the fortuitous mold in which a decision is cast.

There is yet another question which may be asked, addressed to the propriety of the order of the Court of Appeals vacating the sentence. 18 U.S.C. § 3742(e) provides in relevant part that:

Upon review of the record, the court of appeals shall determine whether the sentence . . .

(2) was imposed as a result of an incorrect application of the sentencing guidelines[.]

The cases are uniform in deciding that appellate jurisdiction on the facts of this case is pursuant to § 3742(e)(2). 18 U.S.C. § 3742(f) provides:

If the court of appeals determines that the sentence—

(1) was imposed . . . as a result of an incorrect application of the sentencing guidelines, the court *shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate*[.] (Emphasis added).

█ In §§ 3742(f)(2)(A) and (B), addressing the cases in which a court of appeals determines that a sentence is either too high or too low, the court is directed to "*set aside the sentence* and remand the case for further sentencing proceedings with such instructions as the court considers appropriate[.]" (Emphasis added). The right of appellate review of a sentence is thus limited by the Sentencing Reform Act to insure the proper application of the Guidelines.[5] *Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1117, 117 L.Ed.2d 341 (1992). That

---

**5.** Decisions and dispositions of appeals from sentencing are governed by 18 U.S.C. § 3742(f), which was specifically enacted for that purpose, rather than 28 U.S.C. § 2106, which generally gives courts of appellate jurisdiction the power to "affirm, modify, vacate, set aside or reverse any

judgment . . . of a court lawfully brought before it for review, and . . . remand the cause and direct the entry of such appropriate judgment . . . or require such further proceedings to be had as may be just under the circumstances."

**636**

limited review is mirrored in Rule 35(a), Fed. R.Crim.P. which provides:

(a) *Correction of a Sentence on Remand.* The court shall correct a sentence that is determined on appeal under 18 U.S.C. § 3742 to have been imposed in violation of law, to have been imposed as a result of an incorrect application of the sentencing guidelines, or to be unreasonable, upon remand of the case to the court—

(1) for imposition of a sentence in accord with the findings of the court of appeals; or

(2) for further sentencing proceedings if, after such proceedings, the court determines that the original sentence was incorrect.

If a court of appeals determines that a sentence was imposed as a result of an incorrect application of the guidelines, the narrow scope of appellate review delineated in § 3742(f)(1) requires that the case be *remanded* for further sentencing proceedings with such instructions as are deemed appropriate. That statute provides that the sentence be *set aside and remanded* only in the case where the sentence imposed was outside the applicable guideline range. 18 U.S.C. §§ 3472(f)(2)(A), (B). The statute thus reflects a clear distinction between remanding for further sentencing proceedings and setting aside (i.e., vacating) a sentence.

That there is a recognition of the significance and legal implications of the distinction, is clearly demonstrated in *Dunston v. United States,* 878 F.2d 648 (2d Cir.1989), in which the district court did not fully comply with the procedure required by Rule 32(c)(3)(D) when factual portions of the presentence report are contested by the defendant. After finding that those procedures were not followed, the court said:

Although *we do not vacate* Dunston's sentence today, we find that Dunston *is entitled to a remand* to the district court so that the court can make specific written determinations as to disputed information contained in the PSI and forward a copy of its findings and the resentencing transcript to the Parole Commission.

*Id.* at 650. (Emphasis added).

It would appear that the Court of Appeals in vacating the sentence in this case

may have exceeded the limited scope of appellate review conferred upon it by 18 U.S.C. § 3742(f) and Rule 35(a), Fed.R.Crim.P. This court is, however, obliged to obey the mandate of the Court of Appeals. Accordingly, the defendant is regarded as standing before the court with a clean slate. Applying the guidelines in effect on the date of resentence, she is accorded an additional one level decrease in the offense level for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1 and 1B1.11. The court is fully aware of the discretion it may exercise to downwardly depart from the guidelines in an appropriate case and explicitly states that it does not regard this to be such a case and does not exercise its discretion in that regard. The defendant is, therefore, committed to the custody of the Attorney General for a period of 46 months to be followed by a period of supervised release of 3 years. She is also directed to pay a special assessment of $50.

SO ORDERED.