UNITED STATES of America,
Plaintiff–Appellant,

v.

Maurice L. ZIEGLER, Defendant–Appellee.

No. 93–3376.

United States Court of Appeals,
Tenth Circuit.

Oct. 25, 1994.

Randall K. Rathbun, U.S. Atty., Kansas City, KS, and Gregory G. Hough, Asst. U.S. Atty., Topeka, KS, for plaintiff-appellant.

Marilyn M. Trubey, Asst. Federal Public Defender, Topeka, KS, (David· J. Phillips, Federal Public Defender, with her on the brief), for defendant-appellee.

Before TACHA, LOGAN, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This case is before us for the second time to again review the sentence imposed on Maurice L. Ziegler ("Ziegler"). Ziegler pled guilty to possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court originally sentenced Ziegler below the range required by applicable United States Sentencing Guidelines ("U.S.S.G."), because of Ziegler's presentence drug rehabilitation efforts. *United States v. Ziegler*, 791 F.Supp. 843 (D.Kan.1992). The government appealed, and this court reversed and remanded with instructions that the district court vacate the prior sentence and resentence in accordance with our opinion. *United States v. Ziegler*, 1 F.3d 1044 (10th Cir.1993) ("*Ziegler I* "). We held that drug rehabilitation was an improper grounds for a downward departure. On remand, the district court again departed below the guideline range, 835 F.Supp. 1335 (D.Kan.1993), and the government again appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and, once again, we reverse and remand.

## BACKGROUND

The factual background of this case is set forth fully in our first opinion, *Ziegler I*, 1 F.3d at 1045–46. In summary, police officers

discovered 920 marijuana plants on Ziegler's property, along with paraphernalia for weighing and packaging marijuana, and several shotguns, rifles, and revolvers. *Id.* Ziegler was indicted on multiple counts and ultimately pled guilty to possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

At a modification hearing at which sentence was imposed, it appears that the district court calculated an offense level of 30 and a criminal history category of one, resulting in a sentencing range of 97 to 121 months in prison. 791 F.Supp. at 845. The offense level of 30 does not appear to have taken into account any adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. *See id.* at 844. Instead, the district court held that Ziegler's "remarkable" efforts to rehabilitate from his nearly twenty-year marijuana addiction constituted a "mitigating circumstance" not contemplated by the Sentencing Commission. *Id.* The district court therefore departed downward from the applicable sentencing range, reducing Ziegler's offense level by four levels, from 30 to 26, and imposing a prison term of 63 months. *Id.* at 845. This resulted in a reduction of the offense level that was two levels greater than what would have been achieved by awarding a two level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

The government appealed the sentence, and this court reversed in *Ziegler I,* holding that drug rehabilitation is not a proper ground for downward departure under the Guidelines because it is already "taken into account for sentencing purposes under U.S.S.G. § 3E1.1," the provision for acceptance of responsibility. 1 F.3d at 1047. Although the district court had improperly based its departure upon Ziegler's drug rehabilitation efforts, Ziegler had also alleged alternative mitigating factors that he argued justified a sentence below the applicable range. *Id.* at 1050. Thus, without ruling on these alleged alternative mitigating factors, this court remanded for the district court to resentence Ziegler with instructions to "explicitly set forth the considerations that motivate its decision to depart," if it chose to do so for a second time. *Id.* (quoting *United States v. White,* 893 F.2d 276, 278 (10th Cir.1990)).

On remand, the district court again reduced Ziegler's offense level from 30 to 26, and again departed below the applicable sentence range to impose a 63 month term. 835 F.Supp. 1335; R.O.A., Vol. I, Doc. 102. Once again, the district court declined to award the two level adjustment for "acceptance of responsibility," as authorized by section 3E1.1 of the 1991 Guidelines, but rather chose to adopt a four level departure from the base offense level for what the district court deemed to be "mitigating circumstances" not covered by the Guidelines. In compliance with this court's direction, the district court set forth its reasons for this departure on remand. *See* 835 F.Supp. at 1336–39 (discussing sentencing rationale prior to actual resentencing at later date).

Once again, the district court placed heavy emphasis on Ziegler's drug rehabilitation efforts. However, this time the court also described Ziegler's commendable background and personal characteristics, and noted the problem of prison overcrowding, as further justification for departing beyond the adjustment permitted for acceptance of responsibility. *Id.* The government has appealed the downward departure on resentencing, arguing that it is contrary to this court's holding in *Ziegler I.* For the reasons set forth below, we agree.

## ANALYSIS

The Sentencing Reform Act allows a sentencing court to depart from the guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described." 18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0, p.s. (1991); U.S.S.G. Ch. 1, Pt. A, intro. comment, at 4(b) (1991). Sentencing courts are instructed "to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes," and consider departure only when the court "finds an atypi-

cal case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm." U.S.S.G. Ch. 1, Pt. A, intro. comment, at 4(b) (1991); 18 U.S.C. § 3553(b).

■ In reviewing a district court's decision to depart from a guidelines sentencing range, this court applies a three-step analysis. First, we determine *de novo* whether the circumstances cited by the district court admit of a factor not adequately taken into account by the Sentencing Commission which would justify departure. Second, we review the district court's factual findings supporting departure and determine whether they were clearly erroneous. Third, if the departure was justified, we review the degree of departure to determine whether it was reasonable. *United States v. Pena*, 930 F.2d 1486, 1494 (10th Cir.1991).

However, because we hold that the Sentencing Commission has already adequately accounted for all the factors on which the district court rested its downward departure, we need go no further than step one. Our review of the judge's resentencing indicates that the district court again relied improperly on Ziegler's drug rehabilitation efforts, and that none of the other characteristics described by the district court "significantly differ[ ] from the norm" so as to take this case out of the "heartland" of the guidelines at issue. *See* U.S.S.G. Ch. 1, Pt. A, intro. comment, at 4(b) (1991).

■ The district court's first error at resentencing was to continue to rely on Ziegler's drug rehabilitation efforts to justify a sentencing departure. The district court held that Ziegler's rehabilitation had so "far exceed[ed] ordinary expectations" that it fell outside the heartland of the acceptance of responsibility guideline, and therefore outside of our holding in *Ziegler I*. 835 F.Supp. at 1338 (quoting original sentencing opinion, 791 F.Supp. at 844). "[T]he guideline for acceptance of responsibility applies to the typical acceptance of responsibility cases,

that is, the heartland acceptance of responsibility cases," the district court reasoned, "[while] the nature and quality of defendant Ziegler's acceptance of responsibility was atypical, unusual, and outside the scope contemplated by the guideline." *Id.* at 1337.

This conclusion, however, is an incorrect reading of *Ziegler I*, in which this court explicitly held that "the Guidelines do *not* contemplate drug rehabilitation as a grounds for departure *even in rare circumstances.*" 1 F.3d at 1049 (emphasis added). After analyzing the relevant guidelines, we determined in *Ziegler I* that the Sentencing Commission had already fully and adequately accounted for drug rehabilitation by allowing sentencing courts to consider such efforts (1) "in determining whether a defendant is eligible for a two offense level reduction for acceptance of responsibility,"[1] and (2) "in determining the appropriate sentence within the applicable Guideline range." *Id.* at 1050. Therefore, drug rehabilitation efforts may play no further role in a court's sentencing analysis.

Despite our holding in *Ziegler I*, it is clear that the district court continued to rely on Ziegler's drug rehabilitation to depart below the applicable guideline range beyond that authorized by U.S.S.G. § 3E1.1. While we reiterate our belief stated in *Ziegler I* that "drug rehabilitation is a commendable personal achievement," *id.* at 1050, and while we do not disagree that Ziegler's efforts on this front have been "quite remarkable," we also reiterate our holding in *Ziegler I* that "even in rare circumstances" drug rehabilitation is an improper grounds for departure beyond that authorized by the acceptance of responsibility provision. *Id.* at 1049 (emphasis added).

As we explained in *Ziegler I*, to permit such a departure would not only undermine the Congressional goal of sentencing uniformity, but would "reward[ ] drug dependency because only a defendant with a drug abuse problem [would be] eligible for the depar-

---

1. The 1991 Guidelines, which governed Ziegler's original sentencing in February of 1992, only provided for a two offense level adjustment for acceptance of responsibility. U.S.S.G. § 3E1.1 (1991). Since then, the 1992 and 1993 versions

have allowed for a three-level adjustment under certain circumstances when the base level offense begins at 16 or greater. U.S.S.G. § 3E1.1 (1992 & 1993).

**1062**

ture"—an outcome that the Sentencing Commission has indicated a desire to avoid. *See id.* (analyzing U.S.S.G. § 5H1.4). Thus, the district court erred in continuing to rely on Ziegler's drug rehabilitation efforts to justify downward departure at resentencing.

■ In a further attempt to support departure, the district court also erred in relying on a variety of "character[istics] and circumstances," which the court believed "accentuated" Ziegler's extraordinary acceptance of responsibility beyond that contemplated by section 3E1.1. 835 F.Supp. at 1337–39. These "mitigating" characteristics included the fact that Ziegler: (1) has "maintained a stable marriage, supporting three minor children"; (2) has a reliable employment record "replete with positive comments from employers"; (3) has received the National Defense Medal for service in the U.S. Army and was honorably discharged; (4) has "no history of emotional or mental problems"; (5) "has lived a stable life," having been a lifetime resident of the same county where he has lived "modestly," "owned property," and "developed substantial ties to his community"; and (6) has no previous arrests. *Id.* at 1337–38.

In relying on these characteristics, the district court noted the Commission's instruction in U.S.S.G. § 1B1.4, which provides that sentencing courts "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law," when departing from a sentencing range or when selecting a point within it. U.S.S.G. § 1B1.4 (1991); *see* 18 U.S.C. § 3661. However, this instruction does not change the Congressional mandate that departure is only warranted if these factors rise to the level of a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. In a series of policy statements in U.S.S.G. § 5H1.1 to § 5H1.11, the Sentencing Commission clearly indicated that it *has* considered these supplemental characteristics that the district court relied on in departing from the Guidelines, and that those characteristics should not ordinarily serve as

grounds for departure. U.S.S.G. § 5H1.1 to 5H1.6 and § 5H1.10 to 5H1.12.

These policy statements are based on the Congressional mandate that "[t]he Commission shall assure that the guidelines ... reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant." 28 U.S.C. § 994(e). Thus, these policy statements list characteristics that the Commission has deemed to be not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. *See* U.S.S.G. § 5H1.1 et seq. This list of factors that should *not* ordinarily be considered includes the very characteristics that the district court relied on: (1) family ties and responsibilities, U.S.S.G. § 5H1.6; (2) employment record or employment related contributions, U.S.S.G. § 5H1.5 & 5H1.11; (3) military service, U.S.S.G. § 5H1.11; (4) mental or emotional conditions, U.S.S.G. § 5H1.3; and (5) community ties, U.S.S.G. § 5H1.6. Additionally, the district court's reliance on the fact that Ziegler had no previous arrests is similarly misplaced, as that fact has already been taken into account when setting Ziegler's criminal history category.

While the policy statements in section 5H1 do leave some room for sentencing courts to depart from the guidelines in the rare case when an enumerated characteristic rises to an "unusual" or "atypical" level, the circumstances listed by the district court are not so extraordinary or "significantly differ[ent] from the norm" as to justify departure in this case. *See* U.S.S.G. § 5K2.0; Ch. 1, Pt. A, introductory comment § 4(b). While Ziegler's background and personal achievements are certainly praiseworthy, and provide an indication that Ziegler will become a productive citizen after serving his sentence, they nevertheless do not warrant a departure from the guideline sentencing range. The district court could have appropriately considered these characteristics in deciding what sentence to impose within the applicable range, but it was not permitted to use them as a "mitigating circumstance" to depart from that range altogether.

■ Ziegler argues, however, that even if "no one factor, by itself, would justify such a departure," the "combination of factors" nevertheless warrants a sentence below the guideline range. Appellee's Br. at 6–7. Ziegler relies on the Ninth Circuit's position in *United States v. Cook,* 938 F.2d 149, 153 (9th Cir.1991), that although 18 U.S.C. § 3553(b) "speaks in the singular of 'mitigating circumstance,' ... a unique combination of factors may constitute the 'circumstance' that mitigates." While this court acknowledges the possibility that some "unique combination of factors" may constitute a mitigating circumstance in some future case, the combination of characteristics in this case, each of which is already adequately addressed by section 3E1.1 and the policy statements in sections 5H1.1 to 5H1.11, does not warrant departure here.

■ Ziegler also argues that the district court's departure could alternatively be justified because his offense constituted "aberrant behavior," which this court has held to be "a proper mitigating factor to be considered in a downward departure." Appellee's Br. at 5–6; *United States v. Tsosie,* 14 F.3d 1438, 1441 (10th Cir.1994); *United States v. Pena,* 930 F.2d 1486, 1494–95 (10th Cir.1991).

In *Tsosie,* for example, this court affirmed a downward departure for a defendant's voluntary manslaughter conviction because the defendant's single incident of assaultive behavior was truly "an aberration from his usual conduct." 14 F.3d at 1441. After the defendant's wife had taken their children without his knowledge and provided a false explanation about their whereabouts, the defendant found his wife with a man whom she had previously had an affair. *Id.* at 1439–40, 1442. Viewed in the "totality of the circumstances," the sentencing court found that the defendant's assaultive response was "a complete shock and out of character," warranting a departure for aberrant behavior. *Id.* at 1441.

Similarly, in *Pena,* this court upheld a downward departure for a defendant's conviction of drug possession with intent to distribute, for her role in transporting marijuana across state lines. 930 F.2d at 1489, 1494–95. The sentencing court found that the defendant's act was "an aberration from her usual conduct, which reflected long-term employment, economic support for her family, *no abuse of controlled substances, and no prior involvement in the distribution of such substances,*" and therefore used the aberrational nature of her offense to warrant departure. *Id.* at 1495 (emphasis added).

Here, in contrast, Ziegler's relationship with controlled substances was long-term, as evidenced by his twenty-year marijuana addiction, cultivation of 920 marijuana plants, and possession of marijuana packaging and weighing materials and multiple firearms. Thus, in this case, the district court's downward departure cannot be alternatively justified on the grounds of "aberrational" behavior.

■ Lastly, the district court attempted to support its downward departure by noting its belief that Ziegler's reduced sentence was "an efficient use of a scarce resource, federal prison space." 835 F.Supp. at 1338. In doing so, the court relied on 28 U.S.C. § 994(g), which directs the Sentencing Commission to take into account the capacity of penal facilities when authoring its Guidelines. *Id.* Citing the 1991 Federal Bureau of Prisons Report, which indicates that the prison population is at 148 percent of its capacity, the district court further attempted to support its sentence reduction. *Id.*

We hold that using this statutory provision to justify a downward departure from an applicable sentencing range is improper. In section 994(g), Congress directed *the Sentencing Commission,* not the courts, to consider prison capacities. While the Commission is directed to take into account prison overcrowding in devising its overall guideline scheme, prison capacity is not an appropriate consideration for courts in determining the sentences of individual defendants. Because prison overcrowding applies equally to all defendants facing imprisonment, the capacity of penal facilities cannot constitute a "mitigating" or "unusual circumstance[ ]" to justify departure in a unique individual case. *See* U.S.S.G. § 5K2.0, p.s. (1991).

■ Because we are remanding for resentencing, the district court will be gov-

erned by the guidelines in effect at the time of resentence.[2] *See* U.S.S.G. § 1B1.11; 18 U.S.C. § 3553(a)(4); *United States v. O'Brien,* 18 F.3d 301, 302 n. 1 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 199, —— L.Ed.2d —— (U.S.1994); *United States v. Clark,* 8 F.3d 839, 844 (D.C.Cir.1993); *United States v. Edgar,* 971 F.2d 89, 93 n. 4 (8th Cir.1992); *United States v. Smith,* 930 F.2d 1450, 1454 n. 5 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. Ekhator,* 853 F.Supp. 630, 633–34 (E.D.N.Y.1994). This is the case unless such an application would violate the ex post facto clause of Article I, section 9, of the Constitution, in which case the district court would rely on the Guidelines in effect at the time of the defendant's offense. *O'Brien,* 18 F.3d at 302 n. 1; *Clark,* 8 F.3d at 844; *Edgar,* 971 F.2d at 93 n. 4; *Smith,* 930 F.2d at 1454 n. 5. We note that the acceptance of responsibility adjustment authorized by section 3E1.1 now allows for the possibility of a three level adjustment for someone with an offense level of 16 or greater, provided that person has timely assisted the government in the prosecution of his own misconduct. U.S.S.G. § 3E1.1 (1993) (incorporating amendment to section 3E1.1 of the 1991 guidelines, which only authorized a two offense level adjustment in all cases). Thus, although the district court may not again depart from the guidelines upon resentencing, it may consider either the two level adjustment permitted by section 3E1.1(a) or the three level adjustment now permitted by section 3E1.1(b) for acceptance of responsibility.

Accordingly, we REVERSE and REMAND with instructions that the district court once again vacate the sentence and resentence this Defendant under the current Guidelines, without departing from the applicable guideline range.

---

2. This result would be different if this court's remand was "a narrowly confined request for an explanation of the court's reasons for imposing [a] sentence," rather than "an order direct[ing] the sentencing court to begin anew." *See United States v. Smith,* 930 F.2d 1450, 1456 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. Ekhator,* 853 F.Supp. 630, 633–34 (E.D.N.Y.1994). In the former case, the sentencing court would apply the guidelines in effect at the time of initial sentencing, presuming no ex post facto problems, because the district court is being asked "merely to clarify the record of the initial sentencing proceeding." *Ekhator,* 853 F.Supp. at 633. In the latter case, in contrast, when a sentence is ordered vacated and the matter is remanded for resentencing, "the defendant reappear[s] before the court ... with a 'clean slate,'" being "'placed in the same position as if he had never been sentenced.'" *Id.* at 634 (quoting and analogizing to Fed.R.Crim.P. 32).