**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　Plaintiff-Appellant,

v.

DAVID YAZZIE JONES, Jr.,

　　Defendant-Appellee.

Nos. 97-2341 & 97-2342

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. Nos. CR-96-651-JP & CR-97-151-JP)**

---

Richard A. Friedman (John J. Kelly, United States Attorney, and Kathleen Bliss, Assistant United States Attorney, Albuquerque, New Mexico, with him on the briefs), Department of Justice, Washington, D.C., for Plaintiff-Appellant.

Thomas B. Jameson, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellee.

---

Before **BRORBY, HOLLOWAY**, and **EBEL**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

　　David Yazzie Jones pled guilty to one count of possession of a firearm by a

prohibited person, in violation of 18 U.S.C. § 922(g)(8), and one count of

providing false information to obtain a firearm, in violation of 18 U.S.C. § 922(a)(6). After departing downward three levels under the United States Sentencing Guidelines (U.S.S.G.), [1] the district court sentenced Mr. Jones to six months of home confinement and three years of probation. Pursuant to 18 U.S.C. § 3742(b), the Government now appeals Mr. Jones' sentence. [2] The Government variously challenges the permissibility and the adequacy of the grounds identified by the district court as the basis for the departure. We have jurisdiction pursuant to 18 U.S.C. § 1291 and we affirm.

BACKGROUND

Mr. Jones married Janice Begay in 1979, eventually establishing a homestead with her in New Mexico. After their union produced three children, the marriage began to unravel. By 1995, Mr. Jones and his wife were estranged, and he had left their marital home. Ms. Begay obtained a series of restraining orders against Mr. Jones. The first order restraining Mr. Jones was issued by the Family Court of the Navajo Nation in June 1995. For reasons not clear from the

---

[1] Mr. Jones was sentenced under the 1995 edition of the United States Sentencing Commission's Guidelines Manual. All references are to that edition.

[2] Mr. Jones' sentence arises from separate judgments of conviction entered for one count from each of two indictments, bearing distinct docket numbers. These consolidated appeals followed.

record, Ms. Begay then moved her case to the New Mexico state district court. The state district court issued its first restraining order in September 1995.

On September 15, 1995, while under a restraining order issued at Ms. Begay's behest, Mr. Jones allegedly approached his estranged wife's residence, located in Indian country, while carrying a handgun. Mr. Jones was arrested a few hours later in the early morning hours of September 16, 1995, on a rural road near Ms. Begay's residence. A handgun was found in the vehicle in which he was riding. Mr. Jones was convicted in state magistrate court of negligent use of a deadly weapon and fined $100.

By March 1996, the Federal Bureau of Investigation had begun investigating Mr. Jones. On November 7, 1996, a federal grand jury indicted Mr. Jones. The indictment charged Mr. Jones with four counts of interstate violation of a protection order, in violation of 18 U.S.C. §§ 2262(a)(1), (b)(3), and (b)(5). Based on the September 15, 1995 incident, the indictment also charged one count of possession in or affecting commerce of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2).

On November 14, 1996, Mr. Jones was arrested for the charges in the

federal indictment. After his arraignment, he was released on personal recognizance on November 18, 1996. As a general condition of his release, Mr. Jones was not to commit any criminal offenses. Additional conditions of release prohibited Mr. Jones from possessing firearms, and from traveling, except for limited, specified purposes ( *e.g.*, work, church, grocery shopping).

Prior to his indictment on federal charges, Mr. Jones had been making installment payments toward the purchase of a firearm from Kirtland Pawn and Sporting Goods, located in Kirtland, New Mexico. On January 23, 1997, Mr. Jones traveled with a friend to Kirtland to make the final payment on the weapon. In filling out the requisite Bureau of Alcohol, Tobacco and Firearms form, Mr. Jones falsely indicated he was not under indictment for a crime punishable by more than one year of imprisonment, and misstated his date of birth. Store employees stated Mr. Jones claimed to be a police officer and wanted to take possession of the weapon without a so-called "Brady" clearance. Mr. Jones never attempted to claim the weapon after the mandatory five-day waiting period.

During this period, Ms. Begay had informed Federal Bureau of Investigation agents that she had discovered a receipt belonging to Mr. Jones for the purchase of a firearm. On February 11, 1997, Bureau agents filed a criminal

complaint against Mr. Jones arising from his attempted purchase of the firearm from the Kirtland store. On March 5, 1997, Mr. Jones was indicted for making false statements in connection with acquisition of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

On May 14, 1997, pursuant to a plea agreement under Rule 11(e)(2) of the Federal Rules of Criminal Procedure, Mr. Jones pled guilty to the firearm-possession count of the initial indictment and to the false-statement count of the second indictment. Under the terms of the plea agreement, the Government agreed to dismiss the other four counts contained in the first indictment and to stipulate to a three-level decrease under the Sentencing Guidelines for acceptance of responsibility, contingent on an appropriate culpability statement from Mr. Jones. *See* U.S.S.G. § 3E1.1(a) and (b)(2).

The initial presentence report placed Mr. Jones in criminal history category I, and assigned him an adjusted base offense level of 16.[3] The probation office deducted a total of three levels for Mr. Jones' acceptance of responsibility,

---

[3] Each of the two offenses to which Mr. Jones pled guilty had a base offense level of 14. The base offense level was enhanced by 2 levels to reflect the existence of two non-grouped offenses. *See* U.S.S.G. § 3D1.4.

resulting in a total offense level of 13. *See* U.S.S.G. §§ 3E1.1(a) and (b)(2).

Based on these computations, the guideline range for Mr. Jones' offense was

twelve to eighteen months imprisonment. *See* U.S.S.G. Ch. 5 Pt. A.

Following preparation of the presentence report, Mr. Jones moved for a

three-level downward departure to offense level 10, which would allow the

district court to impose a sentence of probation with home detention. Mr. Jones

raised multiple grounds for departure, which the probation office summarized as

his exemplary employment history; the harm to his children if he was unable to

provide child support; and the aberrant nature of his criminal conduct. The

probation office opined that none of the factors proffered by Mr. Jones would

individually warrant a downward departure, but the combination of factors might

suffice. The probation office concluded that "a departure would not be

inappropriate."

On August 27, 1997, the district court conducted a sentencing hearing. At

the hearing, the district court adopted the factual findings of the presentence

report, as amended. The court also referenced receipt of twelve letters and

statements praising Mr. Jones' character and past conduct, and heard from Ms.

Begay. The district court entertained lengthy arguments from both sides on the

appropriateness of a downward departure. In the end, the district court granted

Mr. Jones' motion for a three-level downward departure under U.S.S.G. § 5K2.0.

The court cited eleven factors which, *in combination*, warranted the downward

departure. [4]

The three-level downward departure reduced Mr. Jones' offense level to 10,

resulting in a guideline imprisonment range of six to twelve months, thus

allowing for a sentence of probation with home confinement under U.S.S.G.

§ 5C1.1(c)(3). Accordingly, the district court sentenced Mr. Jones to three years

probation with special conditions, including a six-month period of home

confinement under electronic monitoring, and forty hours of community service.

These appeals followed.

---

[4] Briefly stated, the following factors were cited by the district court: (1) the employment consequences Mr. Jones would face if he was incarcerated; (2) the financial hardship his incarceration would impose on his children; (3) the aberrational character of his offense conduct; (4) his long history of community service; (5) his support in the community, even among Ms. Begay's family; (6) his lack of notice of the criminality of his conduct as a prohibited person in possession of a firearm; (7) his early disclosure of the facts underlying the false-statement offense to his pretrial services officer; (8) his scrupulous compliance with the conditions of his release; (9) his significant post-arrest improvement; (10) his unique access to rehabilitative counseling in his work setting; and (11) the probation office's conclusion that a departure would be appropriate.

ANALYSIS

As a general rule, if the case before the district court is a typical one, the court must impose a sentence within the applicable Sentencing Guidelines range. 18 U.S.C. § 3553(a); *see also Koon v. United States*, 518 U.S. 81, 85 (1996). However, the Sentencing Commission recognized that unusual or atypical cases would arise, and explicitly reserved some degree of flexibility to the sentencing court:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b). *See also Koon*, 518 U.S. at 98 (recognizing departure decisions as "embod[ying] the traditional exercise of discretion by a sentencing court"). Thus, district courts may depart from the applicable guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). In determining whether a circumstance was adequately taken into consideration by the Sentencing Commission, our inquiry is limited to the Sentencing Guidelines, policy statements, and official commentary of the Commission. *Id.*

Since the Supreme Court's watershed decision in *Koon*, this court has employed a four-prong analysis in reviewing decisions to depart from the applicable guideline sentencing range. *See United States v. Collins*, 122 F.3d 1297, 1303 (10th Cir. 1997). We evaluate "whether the factual circumstances supporting a departure are permissible departure factors." *Id*. "Impermissible factors include forbidden factors, discouraged factors that are not present to some exceptional degree, and encouraged factors already taken into account by the applicable guideline that are not present to some exceptional degree."[5] *Id*. This inquiry, "whether a factor is a permissible departure factor under any circumstances" is "essentially legal," and our review is plenary. *Id*. We also evaluate "whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure." *Id.* This second inquiry is "essentially factual," and our review is "at its most deferential." *Id.* Finally, we evaluate "whether the record sufficiently supports the factual basis underlying the departure," and "whether the degree of

_____

[5] In *Collins*, the sentencing court provided three grounds for its downward departure, two of which, the defendant's age and infirmity, are considered discouraged factors. *See Collins*, 122 F.3d at 1305; U.S.S.G. § 5H1.1, p.s.; *id.* § 5H1.4, p.s. The reviewing panel's analysis makes it clear that a discouraged factor aggregated with other factors as grounds for a departure need not rise to the same level of atypicality as would be required were that factor the sole basis for the departure. *Collins*, 128 F.3d at 1305 n.6, 1305-07.

departure is reasonable." *Id.* In keeping with the guidance of *Koon*, all four aspects of our departure review are subject to a unitary abuse of discretion standard. *Id.*; *see also Koon*, 518 U.S. at 99-100 (providing rationale for unitary abuse of discretion standard).

Here, the district court granted a three-level departure under U.S.S.G. 5K2.0, which authorizes a departure if the court finds a mitigating or aggravating circumstance not adequately taken into account by the Sentencing Commission. *See also* 18 U.S.C. § 3553(b). The district court based its departure on a combination of eleven factors. *See* U.S.S.G. § 5K2.0, comment. (recognizing that combination of circumstances or offender characteristics may remove a case from the heartland). The Government contends the district court abused its discretion in departing from the guideline sentencing range because each of the individual grounds is an impermissible basis for departure under the circumstances of this case, thus, "[n]o combination of the wholly inadequate factors in this case could remove the defendant's case from the heartland and justify a departure."

In reviewing the decision to depart, pursuant to *Collins*, we must first determine whether the district court relied on permissible departure factors. If the eleven factors relied on by the district court are permissible, we then ask whether

the combination of factors removes Mr. Jones from the heartland of the Sentencing Guidelines, giving substantial deference to the district court's conclusion that the facts of this case made it atypical. *See Collins*, 122 F.3d at 1305. If we determine the district court based its decision to depart on both permissible and impermissible factors, we are required to remand the case unless it is clear the district court "would have imposed the same sentence absent reliance on the invalid factors." *Koon*, 518 U.S. at 113 (citing *Williams v. United States*, 503 U.S. 193, 203 (1992)).

As its first ground for departure, the district court pointed to "the defendant's long, impressive work history in a situation where good jobs are scarce," finding "specifically that he has been employed in a very good position for 14 years, earning a very high income for the community in which he lives, which is in an economically depressed area with few job opportunities." The Government reduces the district court's finding to Mr. Jones' "good employment history, " a factor "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.5, p.s. In support of its contention that employment history is not a permissible factor under the circumstances of this case, the Government points to this court's prior rejection of a defendant's "reliable employment record replete with positive

comments from employers" as a basis for departure in *United States v. Ziegler*, 39 F.3d 1058, 1062 (10th Cir. 1994) (internal quotation marks and citation omitted).

Employment history ordinarily is a discouraged basis for departure.[6] *See* U.S.S.G. § 5H1.5, p.s. However, neither the Sentencing Guidelines nor Tenth Circuit precedent categorically precludes the district court's consideration of employment history in making its departure decision. As the Supreme Court has made clear, the Sentencing Commission "chose to prohibit consideration of only a few factors, and not otherwise to limit, as a categorical matter, the considerations which might bear upon the decision to depart."[7] *See Koon*, 518 U.S. at 94; *see also* U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b) (indicating Commission "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in

_____

[6] A defendant's employment record is categorized in the Sentencing Guidelines with other specific offender characteristics, ordinarily discouraged bases for departure. *See* U.S.S.G. Ch. 5, Pt. H, intro. comment. While discouraged factors are not "necessarily inappropriate" bases for departure, they are to be relied on only "in exceptional cases." *Id*.

[7] The Fourth Circuit identified the following factors as categorically impermissible bases for departure under the Sentencing Guidelines: "drug or alcohol dependence or abuse; race, sex, national origin, creed, religion, or socioeconomic status; lack of youthful guidance or similar circumstances indicating a disadvantaged upbringing; personal financial difficulties or economic pressure on a trade or business." *United States v. Brock*, 108 F.3d 31, 34 (4th Cir. 1997) (citations omitted).

the guidelines, that could constitute grounds for departure in an unusual case").

While this court rejected reliance on employment history, along with five other considerations, as evidence of an "extraordinary acceptance of responsibility" in *Zeigler*, 39 F.3d at 1062, elsewhere we have affirmed downward departures based in part on this factor. *See United States v. Tsosie*, 14 F.3d 1438, 1441-42 (10th Cir. 1994) (using defendant's long-term employment as one factor demonstrating offense conduct was aberrational).

Moreover, the Government has attributed an unnecessarily cramped interpretation to the district court's finding. By it terms, the court's finding is not limited to Mr. Jones' exemplary employment history solely as a personal characteristic. The district court considered Mr. Jones' employment history and the impact of incarceration on his prospects for future employment in light of the community in which he lives, an economically depressed area. While rejecting their application under the facts of *Koon*, the Supreme Court gave its approval to the district court's consideration of collateral employment consequences in the decision to depart. *See Koon*, 518 U.S. at 109-11. We find nothing in the Guidelines to suggest the Sentencing Commission either intended to proscribe consideration of or fully considered such factors. *See id.* at 109 (concluding reviewing court's role "is limited to determining whether the Commission has

-13-

proscribed, as a categorical matter, consideration of the factor").

When a factor is not fully considered by the Sentencing Guidelines, "the court must, after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' ... decide whether it is sufficient to take the case out of the Guideline's heartland." *Id.* at 96 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir. 1993)). However, in this instance the district court did not rely on collateral employment consequences as a discrete basis for departure. Accordingly, we need consider this factor as only one of the eleven factors supporting the court's decision to grant a departure under U.S.S.G. 5K2.0. *See Collins*, 122 F.3d at 1305 n.6 (noting appellate court's consideration of guideline factor as one of multiple reasons supporting departure decision rather than as sole basis of departure). A factor may be considered in the aggregate if it is "atypical," even though it may not be sufficient, in and of itself, to support a departure.

After reviewing the record, we conclude the district court did not abuse its discretion in determining the collateral employment consequences Mr. Jones would suffer as a result of incarceration were atypical. While it is not unusual for any individual to suffer employment consequences as a result of incarceration, the

economically depressed area in which Mr. Smith lived would attach unique burdens to his incarceration.

The second ground for departure cited by the district court was the economic hardship Mr. Jones' incarceration would inflict on his three children and estranged wife due to his decreased ability to pay child support. [8] Under U.S.S.G. § 5H1.6, p.s., "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." Family ties and responsibilities are specific offender characteristics, ordinarily a discouraged basis for departure. *See* U.S.S.G. Ch. 5, Pt. H, intro. comment. However, § 5K2.0 makes it clear such factors can be the basis of a departure in atypical cases:

> An offender characteristic ... that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic ... is present to an unusual degree and distinguishes the case from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing.

U.S.S.G. § 5K2.0, p.s.; *see also Koon*, 518 U.S. at 96 (concluding district court may depart "if the [discouraged] factor is present to an exceptional degree or in

---

[8] At the time of sentencing, Mr. Jones' children were aged seventeen, twelve and nine; he was paying approximately $690 per month in child support.

some other way makes the case different from the ordinary case"). Thus, a district court may rely on offender characteristics such as family ties and responsibilities in making a decision to depart from the Guidelines.

When used as the sole basis for departure, family circumstances must be "extraordinary." *United States v. Rodriguez-Velarde*, 127 F.3d 966, 968-69 (10th Cir. 1997). To warrant a departure on this basis, "a defendant must demonstrate that 'the period of incarceration set by the Guidelines would have an effect on the family or family members beyond the disruption to family and parental relationships that would be present in the usual case.'" *Id.* at 968 (quoting *United States v. Canoy*, 38 F.3d 893, 907 (7th Cir. 1994)). However, in this case, we consider Mr. Jones' family responsibilities not as the sole basis for departure, but in conjunction with ten other factors identified by the district court.

Even considered as one factor supporting a composite mitigating circumstance, we are not convinced Mr. Jones' family responsibilities are sufficiently unusual to render this discouraged factor a permissible basis for departure. While Mr. Jones provides substantial child support, Ms. Begay, the custodial parent, is employed and capable of providing for the children. The district court erred when it relied on Mr. Jones' family circumstances as one

ground for departure.

As the third ground for departure, the district court concluded Mr. Jones'
offense conduct was aberrational, making the following finding:

> [T]he defendant's offense conduct was out of character for the
> defendant, who basically had been law-abiding until age 35, when his
> marriage disintegrated. The defendant's offense conduct was an
> aberration ... related to the turmoil involved in marital separation.

The Sentencing Guidelines indicate the Commission "has not dealt with the single
acts of aberrant behavior that still may justify probation at higher offense levels
through departures." U.S.S.G. ch. 1, pt. A , intro. 4(d). The Government does
not challenge directly the permissibility of this factor, but does argue Mr. Jones'
offense conduct does not qualify as aberrant behavior under the Guidelines
because it is neither a single act nor truly aberrant.

Under our case law, the aberrant nature of a criminal defendant's offense
conduct may properly be considered as a mitigating factor in a downward
departure decision. *See Tsosie* , 14 F.3d at 1441 (holding aberrational conduct
combined with steady employment and economic support of family warranted
departure); *United States v. Pena* , 930 F.2d 1486, 1495 (10th Cir. 1991) (holding
extraordinary family responsibilities combined with aberrational nature of conduct
warranted departure). In *Pena*, we focused our departure analysis not on the

number of discrete acts undertaken by the defendant, but on "[t]he aberrational character of her conduct." *Pena*, 930 F.2d at 1495. More recently, this court suggested a district court's reliance on *Pena* was undermined by its failure to make a finding that the defendant's "criminal *acts* constituted a *single aberrant episode* or were utterly inconsistent with his character." *United States v. Archuleta*, 128 F.3d 1446, 1450 (10th Cir. 1997) (emphasis added). Nothing in the Sentencing Guidelines or our case law indicates it is impermissible for a district court to consider a single aberrant episode in making a decision to depart. *See Tsosie*, 14 F.3d at 1441-42 (examining totality of the circumstances); *Pena*, 930 F.2d at 1494-95 (same).

In reviewing the district court's characterization of Mr. Jones' offense conduct as aberrant behavior under the abuse of discretion standard we must determine how much deference is due. The Supreme Court has indicated deference is owed to the "judicial actor better positioned than another to decide the issue in question." *Koon*, 518 U.S. at 99 (quotation marks, omission, and citations omitted). The Supreme Court has further indicated the district court has a "special competence" in making the fact-specific assessments necessary to determine whether a particular case is sufficiently unusual to warrant departure. *Id*. In such instances, deferential appellate review facilitates the district court's

-18-

resolution of questions involving "multifarious, fleeting, special, narrow facts that utterly resist generalization." *Id*. (quotation marks and citation omitted).

We are convinced the determination of whether an individual defendant's offense conduct is aberrational, like the decision to depart, requires consideration of unique factors not readily susceptible of useful generalization. The district court is in the better position to determine whether the defendant's offense conduct is out of character for that individual. Accordingly, the district court's resolution of this largely factual question is due substantial deference. After reviewing the record here, we conclude the district court did not abuse its discretion when it found Mr. Jones' offense conduct to be aberrational in light of his personal history.

The fourth and fifth grounds for departure cited by the district court were, respectively, Mr. Jones' long history of community service, and his strong support in the community, even among the family of the victim. The Sentencing Guidelines treat "good works" and community ties as specific offender characteristics, not ordinarily relevant to sentencing. U.S.S.G. §§ 5H1.6, p.s. and 5H1.11, p.s. The Government contends there is "nothing" in the record to support departure on these bases. We disagree. The sentencing court specifically found

the number of letters from Ms. Begay's close relatives written in support of Mr. Jones, extolling his past "good works" and opposing his incarceration "very unusual."  Community leaders also wrote similar letters on Mr. Jones' behalf.

While criticizing the district court for not reviewing Mr. Jones' community service in detail, the Government points to nothing in the record that would lead us to second-guess the district court's assessment.  The district court had reviewed twelve letters written on Mr. Jones' behalf, detailing his good works.  While the district court could have done a more thorough job of explaining its reasoning, and we would be reluctant to sustain a departure solely on this basis, we cannot conclude the district court abused its discretion by aggregating this factor in support of a downward departure.   *See United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) (affirming downward departure based on defendant's medical condition and good deeds).

The Government contends Mr. Jones' support in the community, most notably among Ms. Begay's family, is irrelevant to sentencing.  The Government, in reliance on  *Unites States v. Meacham*, 115 F.3d 1488 (10th Cir. 1997), argues that the views of Ms. Begay's relatives have no relevance.   *Meacham*, a case in which the district court relied for its departure on the twelve-year-old victim's

"utter forgiveness" of the adult relative who sexually abused her is simply inapposite. *See Meacham*, 115 F.3d at 1497. The basis of the departure here is not the victim's forgiveness, but Mr. Jones' support in the community. *See United States v. Big Crow*, 898 F.2d 1326, 1332 (8th Cir. 1990) (affirming downward departure based in part on "solid community ties"). While Mr. Jones' support in the community is insufficiently "extraordinary" to support a departure on this basis alone, the district court did not abuse its discretion by relying on this factor as one of several grounds supporting a departure.

The sixth ground for departure cited by the district court was Mr. Jones' lack of notice that he could not possess a firearm because he was subject to a domestic restraining order. *See* 18 U.S.C. § 922(g)(8). The court specifically found that Mr. Jones lacked notice of the criminality of his conduct, and was "unaware that it was an offense at the time it was committed." The record indicates Mr. Jones was the first person in the district prosecuted as a prohibited person under the domestic relations order provision.

The Government argues persuasively that "[t]here is no requirement that defendant be aware of the law or even act 'willfully' in order to be lawfully convicted under Section 922(g)." But Mr. Jones' conviction is not at issue here;

the issue is whether the Guidelines provide us with guidance on the use of a defendant's lack of notice as a basis for departure.

Lack of notice is not addressed specifically by the Sentencing Guidelines. When a factor is unmentioned by the Guidelines, we look to the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole." *Koon*, 518 U.S. at 96 (quotation marks and citation omitted). The applicable individual guideline is U.S.S.G. § 2K2.1(a)(6), covering offenses involving the unlawful possession of firearms or ammunition by a prohibited person. The specific offense characteristics for this guideline provide for a downward departure if a prohibited person possessed the firearm for "lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use" the weapon. *Id*. § 2K2.1(b)(2). There is a specific enhancement if the weapon is used or intended to be used in another felony offense. *Id*. § (b)(5).

While Mr. Jones claims his possession of a firearm was innocent, the fact remains the charge was rooted in his conduct on September 15-16, 1995. On that occasion, Mr. Jones was accused of violating a domestic restraining order by approaching his estranged wife's home while carrying a handgun, was arrested

-22-

while in a vehicle with a handgun determined to be his, and was convicted in state magistrate court of negligent use of a deadly weapon. Under these circumstances, Mr. Jones' claim that he is "less culpable" because he lacked notice of the specifics of 18 U.S.C. § 922(g)(8) rings hollow. While he did not use the weapon in a felony offense, he did negligently misuse the weapon. The relevant guideline clearly intended to punish innocent possession and use of a firearm less severely, and improper use more severely. Consequently, we conclude Mr. Jones' lack of notice was not a permissible basis for departure under the facts of this case.

The seventh ground for departure identified by the district court was Mr. Jones' "highly unusual" disclosure of the facts underlying his false-statement offense to his pretrial service officer. The Government contends Mr. Jones' voluntary disclosure is an impermissible basis for departure because the ongoing federal investigation eventually would have discovered the offense, and because he received an acceptance of responsibility adjustment under the terms of the plea agreement.

In discussing grounds for departure, the Sentencing Guidelines state that "[i]f the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and

if such offense was unlikely to have been discovered otherwise, a departure below the applicable guideline range for that offense may be warranted." U.S.S.G. § 5K2.16, p.s. However, disclosures motivated by "the defendant's knowledge that discovery of the offense is likely or imminent, or where the defendant's disclosure occurs in connection with the investigation or prosecution of the defendant for related conduct" are excluded. *Id.* Mr. Jones' disclosure appears to fall between the express provisions of the Guidelines, *i.e.*, his disclosure does not appear to have been motivated by fear of detection, but the offense was likely to be discovered. While not falling squarely within the departure provision, we cannot conclude the inevitable discovery of Mr. Jones' offense somehow transforms his nonetheless voluntary disclosure into an impermissible basis for departure. Moreover, there is nothing in the record to indicate Mr. Jones was aware the Federal Bureau of Investigation had received a lead and was looking into his purchase of a firearm. Consequently, his disclosure to the pretrial services officer did not occur "in connection with" that investigation and is not excluded as a ground for departure under § 5K2.16.

Prior to the district court's downward departure, Mr. Jones received a three-level deduction for acceptance of responsibility. *See* U.S.S.G. §§ 3E1.1(a) and (b)(2). While not a matter of right, this deduction is quite common in cases

where the defendant enters a timely plea of guilty. *See* U.S.S.G. § 3E1.1, comment. (n.1-2), (backg'd.); *see also United States v. Core*, 125 F.3d 74, 78 (2d Cir. 1997) (noting standard acceptance of responsibility reduction is "easily achieved and is accordingly of relatively low value"), *cert. denied*, 118 S. Ct. 735 (1998). Without elaboration, the Government asserts this "is all that is legally permissible." We disagree. First, the grounds cited by the district court focus on the voluntariness of Mr. Jones' disclosure, not simply his acceptance of responsibility. Second, the Sentencing Commission specifically acknowledged that the district court is in a "unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n.5). "For this reason, the determination of the sentencing judge is entitled to great deference on review." *Id*. By this same logic, we must accord the district court's decision that Mr. Jones' conduct was "highly unusual" and went beyond the scope of U.S.S.G. § 3E1.1 due deference. Accordingly, we cannot say the district court abused its discretion when it relied, in part, on Mr. Jones' early, voluntary disclosure of the facts underlying one of the charges against him as one of several bases for departure.

The eighth and ninth grounds for departure cited by the district court were, respectively, Mr. Jones' adherence to the conditions of his release, and

improvement in his post-offense conduct. Treating both grounds as post-offense rehabilitation, the Government contends that this factor is not a permissible ground for departure under Tenth Circuit precedent, and that the Sentencing Guidelines have already taken such efforts into account under the acceptance of responsibility guideline.

The Government points to this court's decision in *Zeigler*, and its progeny, for the proposition that post-offense rehabilitation "is an improper ground[] for departure beyond that authorized by the acceptance of responsibility provision" of the Guidelines. *Zeigler*, 39 F.3d at 1061; *see also* U.S.S.G. § 3E1.1, comment. (n. 1(g)). However, another panel of this court recently determined our decision in *Zeigler* was "effectively overruled by *Koon*." *United States v. Whitaker*, ___ F.3d ___, ___, 1998 WL 480091, *1 (10th Cir. Aug. 17, 1998). The Supreme Court's holding in *Koon* makes it clear the district court has the authority to consider post-offense rehabilitation as a basis for downward departure. *Koon*, 518 U.S. at 94-96, 108-09 (holding district court may consider any factor not specifically prohibited by the Sentencing Guidelines); *see also United States v. Sally*, 116 F.3d 76, 80 (3d Cir. 1997) (holding downward departure may be warranted by exceptional post-offense rehabilitation efforts); *United States v. Brock*, 108 F.3d 31, 34 (4th Cir. 1997) (overruling, in light of *Koon*, earlier holding that post-

offense rehabilitation can never be the basis of departure).

The Sentencing Guidelines have taken post-offense rehabilitation efforts into consideration. *See* U.S.S.G. § 3E1.1, comment. (n. 1(g)). One of the "appropriate considerations" in determining whether a defendant qualifies for the acceptance of responsibility reduction is post-offense rehabilitation, including counseling or drug treatment. *Id*. (n.1). When an encouraged factor has been taken into consideration by the Guidelines, it may serve as the basis for departure only when present to some "exceptional degree." *Collins* , 122 F.3d at 1303. However, we remain mindful of the fact that the district court is better situated to make this determination and is, therefore, entitled to "great deference on review." U.S.S.G. § 3E1.1, comment. (n. 5).

In describing Mr. Jones' post-offense conduct, the district court specifically noted Mr. Jones had "scrupulously followed the conditions of release," including refraining from contact with Ms. Begay, his estranged wife. Mr. Jones had "worked regularly," supported his three children, and had daily contact and regular consultations with a psychologist, resulting in a "significant improvement in [Mr. Jones'] understanding and attitude." The district court found Mr. Jones had changed both his "attitude and conduct" during his post-arrest release. In

deciding to depart downward, the sentencing court concluded Mr. Jones' post-arrest improvement was "significant."

The fact-based assessment of whether Mr. Jones' post-offense rehabilitation efforts are exceptional falls squarely within the realm of the district court's "special competence." *Koon*, 518 U.S. at 99. The record supports the district court's finding Mr. Jones' efforts were atypical. Therefore, the district court did not abuse its discretion relying on Mr. Jones' post-offense conduct as a basis for its downward departure.

The tenth ground for departure supplied by the district court was the negative effect incarceration would have on both the quality and quantity of Mr. Jones' rehabilitative counseling. The Government contends a defendant's mental and emotional conditions are not ordinarily relevant to sentencing, and that there was "nothing life-threatening or otherwise exceptional about the deprivation" of counseling services in Mr. Jones' case.

Mental and emotional conditions are specific offender characteristics. U.S.S.G. § 5H1.3, p.s. As such, they ordinarily are discouraged bases for departure. U.S.S.G. ch.5, pt. H, intro. comment. However, the Guidelines clearly

provide that a sentencing court may consider specific offender characteristics in determining whether to depart if the characteristic "is present to an unusual degree and distinguishes the case from the 'heartland' cases covered by the guidelines in a way that is important to the purposes of sentencing." *Id*. § 5K2.0, p.s. One of the purposes of sentencing is "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The district court found Mr. Jones' employment at a public health facility afforded him the opportunity for daily contact with his psychologist, putting Mr. Jones "in a very special position to receive the most effective counseling for rehabilitation." The sentencing court also found incarceration would sever Mr. Jones' connection to a counselor the court determined to be "beneficial" to him. *Id*. The court concluded the "unusual situation" of Mr. Jones' employment provided the "very best place" for him to receive rehabilitative counseling.

Contrary to the Government's assertions, there was something "exceptional" about Mr. Jones' circumstances: his unique access to rehabilitative counseling in his work setting. Maximizing the effectiveness of rehabilitative counseling clearly serves one of the primary purposes of sentencing, correctional

treatment. Under these circumstances, we conclude the district court did not abuse its discretion when it considered access to rehabilitative counseling as one factor supporting its decision to depart downward.

As its eleventh reason for departure, the district court indicated it was "impressed by the fact that the United States Probation Office has concluded that it is appropriate to depart downward in this instance." The Government contends this was not a permissible ground for departure, because "[i]f a departure is not based on a lawful ground, support for it by the probation officer has no legal consequence." While we agree with the Government that the unsupported opinion of a probation officer cannot serve as the basis for a departure, we are of the opinion the Government may be reading too much into the observation of the sentencing court.

In this case, the probation officer reviewed Mr. Jones' motion for a downward departure. In an addendum to the presentence report, the probation officer considered the factual basis of the departure factors identified by Mr. Jones, and whether those factors could support a departure under the Sentencing Guidelines. Sentencing courts typically rely, both explicitly and implicitly, on the expertise and recommendations of the probation office in working with the

Sentencing Guidelines. In this instance the district court simply indicated that it had favorably considered the probation officer's opinion. As we have discussed elsewhere, it is important for sentencing courts to be precise in making sentencing comments, particularly in relation to departure decisions. *See United States v. Haggerty*, 4 F.3d 901, 904 (10th Cir. 1993). We will not fault the district court here for thoroughly reporting its reasons for departure. While it would be inappropriate for a sentencing court to rely solely on the unsubstantiated opinion of a probation officer, it is not impermissible for the district court to consider the probation officer's opinion on the appropriateness of a departure. However, we do not consider this "factor" on a par with the other grounds for departure articulated by the district court.

Having reviewed the eleven grounds for departure considered by the sentencing court, we conclude the district court relied on both valid and invalid factors. Permissible factors considered by the district court included collateral employment consequences, aberrant nature of the offense conduct, community service, support in the community, voluntary disclosure of offense conduct, post-offense rehabilitation, and access to rehabilitative counseling. Only family responsibilities and lack of notice of the criminality of his offense conduct were impermissible factors under the circumstances of this case.

We move to the second inquiry in our departure analysis, whether the combination of permissible factors considered by the district court removes Mr. Jones' case from the heartland of the Sentencing Guidelines. *Collins*, 122 F.3d at 1303. This inquiry is essentially factual and the assessments of the district court are entitled to substantial deference. *Id*. Of necessity then, we simultaneously consider whether the record sufficiently supports the factual basis of the departure. *Id*.

The Sentencing Commission explicitly left open "the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances [not ordinarily relevant to a departure], differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing." U.S.S.G. § 5K2.0, comment. While recognizing that such an atypical case might warrant a departure, the Government summarily asserts that "[n]o combination of the wholly inadequate factors in this case could remove defendant's case from the heartland and justify a departure."

The record before us leaves no doubt the sentencing court found this case sufficiently atypical to warrant departure, without recourse to the two impermissible factors. First, the district court made a global assessment that "all

of these factors," not in combination, but individually, "are present to an exceptional degree." Second, the court's discussion of the various individual grounds for departure indicates the permissible factors were present to an exceptional degree. By way of illustration, the court referred to Mr. Jones' "highly unusual" disclosure of the facts underlying his offense conduct; his "significant post-arrest improvement" and "scrupulous[]" adherence to the conditions of release; his "significant improvement" in understanding and attitude; and his "very special position to receive the most effective counseling for rehabilitation" at his job site, making it "the very best place" for Mr. Jones to be counseled. Third, the court characterized Mr. Jones' entire criminal episode as an "aberration," again pointing up the unusualness of the case.

Finally, the record indicates the district considered its decision to depart in light of the statutory purposes of sentencing. *See* 18 U.S.C. § 3553(a)(2). Those purposes include both the need to provide the defendant with the most effective correctional treatment and the need to protect the public. *Id*. We have already discussed the district court's careful consideration of where Mr. Jones would receive superior rehabilitation counseling. However, prior to granting Mr. Jones' motion for a downward departure, the district court also satisfied itself that Mr. Jones had observed the conditions of his release and that Ms. Begay, his former

-33-

spouse, would enjoy peace of mind if Mr. Jones was placed on probation.

In view of the district court's special competence in making the refined comparative factual assessments necessary to determine if a circumstance is unusual or a characteristic is present to an exceptional degree, *see Koon*, 518 U.S. at 98-99, we are not inclined to substitute our judgment for that of the sentencing court. The district court did not abuse its discretion when it found the circumstances of this case atypical. The permissible departure factors available to the district court, in the aggregate, provided a proper basis for departure, and are supported adequately in the record. [9]

When a departure is warranted, as it is here, we finally must determine

---

[9] The Government expresses concern that sentencing departures based on multiple factors might lead to unwarranted departures, supported by nothing more than a "laundry list" of details. This is so, the Government contends, because every case and offender, examined in sufficient detail, is unique. The Government's concern is overstated. While every case or offender is unique, not every set of circumstances is atypical in a manner consistent with the theory and structure of the Sentencing Guidelines. Moreover, we are confident the district courts will continue to depart from the Guidelines based on substantive aspects of the cases before them, rather than on mere details; departures, whether upward or downward, will remain the exception rather than the rule in sentencing. Finally, should a problem actually arise, it is the role of the Sentencing Commission, not the courts, to monitor departure decisions and revise the Guidelines as needed. *See* U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b); *Koon*, 518 U.S. at 108-09.

whether the degree of departure from the guideline sentencing range was reasonable. *Id*.; *see* 18 U.S.C. § 3742(e)(3). A sentencing court must explain, *inter alia*, why the specific degree of departure granted or imposed is reasonable. *United States v. Jackson*, 921 F.2d 985, 989 (10th Cir. 1990). We consider the district court's reasons for imposing a particular sentence in light of the purposes of sentencing. *United States v. Smith*, 133 F.3d 737, 752 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 2306 (1998); *see also* 18 U.S.C. 3553(a)(2) (detailing purposes of sentencing).

In sentencing Mr. Jones, the district court explicitly considered "the sentencing goals of punishment, deterrence and protection of the public." The district court also noted the extent and seriousness of Mr. Jones' offense conduct. The district court departed downward three levels because that was exactly the extent of downward departure required under the Sentencing Guidelines to "reach Zone B [of the sentencing table], which would allow a sentence of probation with stringent conditions," which the district court determined was "the most appropriate sentence under the circumstances" of Mr. Jones' case. The district court also explicitly considered the magnitude of the departure relative both to Mr. Jones' offense level under the Sentencing Guidelines and to guidance provide by our case law.

In reviewing the degree of departure in this case, we note that only a sentence of probation would address the district court's explicit concern with maintaining the ongoing, and apparently effective, rehabilitative counseling relationship Mr. Jones had through his employment at the public health facility, while simultaneously avoiding the collateral employment consequences of incarceration. The district court concluded a sentence consisting of probation and home confinement was "[i]n the interest of justice."

A sentencing court is charged with the task of imposing a sentence "sufficient, but not greater than necessary," to accomplish the goals of sentencing. 18 U.S.C. 3553(a). Departures are authorized by the Sentencing Guidelines for the express purpose of addressing unusual circumstances and unusual cases. *See* U.S.S.G. Ch. 1, Pt. A, intro. comment 4(b). As the Supreme Court reminds us, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon*, 518 U.S. at 113. Under the circumstances of this case, we conclude the district court's decision to depart downward three levels was reasonable.

However, because the district court based its decision to depart on both permissible and impermissible factors in this case, we must determine whether a remand is required. *See* 18 U.S.C. § 3742(f); *Koon*, 518 U.S. at 113. When a district court bases a departure, in part, on improper grounds, the reviewing court should remand the case unless it concludes, on the record as a whole, the district court "would have imposed the same sentence absent reliance on the invalid factors." *Koon*, 518 U.S. at 113 (citing *Williams*, 503 U.S. at 203). We so conclude. Based on our review of the record, we are convinced the district court would impose the same sentence on remand.

Accordingly, the decision of the district court to depart downward in sentencing Mr. Jones is **AFFIRMED.**