**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 17 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

BOBBY LEE JOHNSON; JIMMY
DEAN JOHNSON,

Defendants-Appellees.

No. 98-5166
(D.C. No. 98-CR-009-K)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **KELLY**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Therefore, the case is ordered submitted without oral argument.

The government appeals the sentences imposed by the district court on defendants Bobby Lee Johnson and Jimmy Dean Johnson for manufacturing

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

counterfeit currency and aiding and abetting, in violation of 18 U.S.C. §§ 471 and 2. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and reverse and remand for resentencing.

Defendants purchased a color copier and produced over $2,600 worth of counterfeit currency in various denominations. They passed approximately $1,700 in counterfeit currency at convenience stores and restaurants in Oklahoma, Arkansas, and Missouri. After indictment, defendants pleaded guilty to manufacturing counterfeit currency and aiding and abetting, and each was sentenced to three months' imprisonment and two years' supervised release.

The government challenges the district court's calculation of defendants' base offense levels. Although the presentence reports recommended base offense levels of fifteen, in accordance with U.S.S.G. § 2B5.1(b)(2), the court reduced the base offense levels to nine.

We review a sentencing court's factual findings for clear error, giving deference to the court's application of the sentencing guidelines to the facts, and review de novo questions of law regarding application of the guidelines. United States v. Lacey, 86 F.3d 956, 967 (10th Cir. 1996)

Section 2B5.1(a) of the Guidelines establishes a base offense level of nine for crimes involving counterfeit bearer obligations of the United States. Under subsection (b), the base offense level is increased to fifteen "[i]f the defendant

manufactured or produced any counterfeit obligation or security of the United States." U.S.S.G. § 2B5.1(b)(2). A background note to the section indicates "an enhancement is provided for a defendant who produces, rather than merely passes, the counterfeit items." U.S.S.G. § 2B5.1, comment (backg'd). An application note provides: "Subsection (b)(2) does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." U.S.S.G. § 2B5.1, comment (application note 4)

At the sentencing hearing, the government presented testimony from a Secret Service agent that the counterfeit currency was of "passable quality," and, in fact, was of higher quality than some counterfeit currency the agent had seen produced with an offset press. The district court concluded the currency was "passable," but found application note 4 applied.

> It appears to me the application note means nothing if we have reached the point where all color copiers are capable of making passable quality money. You know, I know there were some early attempts to just limit application note 4 to saying that it doesn't apply to persons who merely photocopy notes or otherwise produce items. But you know then it was "the otherwise produced items that are so obviously counterfeit they're unlikely to be accepted, even if subjected to only minimum scrutiny," that kind of became the test.
> From your testimony today, that test doesn't exist anymore. These machines are capable of producing money that is certainly going to be passable, certainly acceptable. They have reached that point where the quality is so good that, I admit, I couldn't tell. Mr. Johnson talks about being a little too green or a little dark or a little this or that. You know, it looks like money. And if you're in a store

that takes money, why you're likely to accept it.

Now, it's my interpretation, and you're welcome – of course, you always have a right to go to the Tenth Circuit, but you'd have my blessing if you wanted to go and get the latest reading on this, but it seems like to me it only makes sense that this 2B5.1(b) to be interpreted to mean something more than a copier bought off of the floor of a retail store and ordinary bond paper.

. . . .

It's as unsophisticated as this crime can be committed. You have a few beers and you decide to go buy a photo copier and you run off some notes and you run around and pass it. I mean, it's so stupid it's ludicrous. And I don't see how – I just don't see how this makes any sense if we enhance that base level of conduct.

I'd be much – I just think what needs to happen is the Sentencing Commission needs to look at this, and we either ought to have a base level of 9 for just use of a photo copier and bond paper and nothing else, or we ought to have a base offense level of 15 for this.

So I'm going to grant the – both defendants' objections with regard to 2B5.1(b)(2). I don't think that is appropriate under these circumstances, and I don't think the – to hold otherwise, this application note 4 would become totally meaningless. And I'm going to try to give some credit to the Commission for having something in mind when they put that application note in there.

App. IV at 52-54.

Given the district court's finding that the counterfeit currency produced by defendants was of passable quality, it is clear the court erred in interpreting and applying subsection (b)(2) and application note 4. In particular, the court read a "sophistication" requirement into the subsection and application note that is not there. As the language of subsection (b)(2) clearly indicates, a base offense level of fifteen is required if a defendant is involved in the manufacture or production of counterfeit currency. The sole exception to this requirement, as outlined in

-4-

application note 4, occurs when the counterfeit currency produced was "so obviously counterfeit that [it was] unlikely to be accepted even if subjected to only minimal scrutiny." Because that exception did not apply here, given the district court's finding with respect to the quality of the counterfeit currency, the court was required to impose a base offense level of fifteen. See United States v. Bruning, 914 F.2d 212, 213 (10th Cir. 1990) (refusing to interpret the application note as excluding from subsection (b)(2) all persons who produce counterfeit notes by photocopying).

Although the district court was apparently concerned the application note had been rendered null by new photocopy machines that make it easy for the average person to produce passable quality counterfeit currency, we do not share that concern. Even assuming a state-of-the-art copy machine makes the counterfeiter's task easier, it is not inevitable that passable quality counterfeit currency will be produced. As defendants' own admissions in this case indicate, it still takes some effort on the part of the counterfeiter to produce a passable quality product. If copier technology some day actually nullifies the application note, it would be "the role of the Sentencing Commission, not the courts, to . . . revise the Guidelines as needed." United States v. Jones, 158 F.3d 492, 505 n.9 (10th Cir. 1998).

The judgment of the district court is REVERSED and the case is

REMANDED to the district court for resentencing in accordance with this opinion.

Entered for the Court

Mary Beck Briscoe
Circuit Judge