**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 6 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

YAZZIE KING,

Defendant - Appellant.

Nos. 99-2306
and 99-2333

(D. New Mexico)

(D.C. No. CR-98-16-JP)

**ORDER AND JUDGMENT** *

Before **BRORBY** , **ANDERSON** , and **HENRY** , Circuit Judges.

Yazzie King was convicted, after a jury trial, on two counts of sexual abuse

within Indian country, in violation of 18 U.S.C. §§ 1153, 2242(1), and

2246(2)(C), and sentenced to 108 months imprisonment.  On appeal, he contends

that there was insufficient evidence to support his conviction on Count IV of the

indictment, and that, in light of this error, we should order reconsideration of his

motion for downward departure of his sentence based on aberrant behavior.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Because we find there was sufficient evidence for his conviction and that King's conduct was not aberrant, we affirm.

**BACKGROUND**

Yazzie King, a Navajo medicine man and a member of the Native American Church, practices traditional Navajo healing methods. In January 1994, Eugenia Quintana, a Navajo woman, experienced sleeplessness and loss of appetite, which she believed stemmed from a small lump below her sternum. After a friend suggested that she see King for relief, she drove to King's residence, where she met King for the first time. After explaining to King that she was not feeling well, King instructed her to wait for him in a nearby hogan.

In the hogan, after listening to her symptoms, King told Quintana that her problems were being caused by an object inside her. At trial, Quintana testified: "I was afraid, because I had heard stories about invisible objects being sent to harm people by people not wishing you well, but I had never had the experience of having anybody tell me that there was an object in me and I was afraid. I was very frightened." R. Vol. VI at 163. King then told Quintana that the object was not in her chest, where she had described feeling a lump, but was instead in her groin area, and that for her to get better he would have to remove it. King instructed Quintana to remove her clothes and to lay back on some cushions,

which she reluctantly did. Quintana testified that King grabbed her ankles and pushed them so her knees went up, and then pulled her legs apart. King then inserted a long, hard object into Quintana's vagina. Quintana did not know what the item was. It was later determined to be a seven-and-three-quarter-inch bamboo flute that King purchased at a flea market and used in ceremonies. Quintana testified that, after some time, King removed the flute and told her that the object that had been lodged in her groin was "gone." Id. at 170. When she asked to see the object he had purportedly removed, King repeated, "It's gone." Id. King did not pray, sing or chant during the ceremony. See id. at 170-71.

Approximately one year later, another Navajo woman, Juanelle Begay, sought King's assistance for nightmares her four-year-old daughter was experiencing. Begay, her daughter, and her parents visited King's hogan. During the consultation, King informed Begay that her daughter's nightmares were the result of Begay's previous miscarriage, and that he needed to perform a ceremony to send the spirit of the deceased child away. King instructed Begay's parents to leave the hogan, but later allowed her mother to remain to interpret, provided she did not watch the ceremony. King instructed Begay to remove her clothes, which she did. Begay testified that King "said that he was going to put this, this thing, this whistle inside of me, that it wasn't going to take that long." Id. at 221. After inserting the flute into Begay's vagina, he ceremoniously fanned Begay with a

feather. After the procedure was concluded, King instructed Begay to remove her daughter's clothes, and approached the child with the ceremonial flute. However, when Begay attempted to do so, her daughter kicked and screamed. King agreed to allow Begay's daughter to remain in her clothing, and concluded the ceremony by fanning her with a feather.

On June 24, 1996, Trudy Jim and her boyfriend stopped at King's home to pick up Jim's father, who was visiting King for a traditional Navajo ceremony. While Jim and her boyfriend were waiting outside the hogan, King told Jim that her assistance was needed inside the hogan. During the ensuing ceremony, King motioned for Jim to come stand behind him, where he showed her an image in the coals of the fire. King explained to Jim that the image depicted a baby with a hole in its backbone, and Jim testified that King said "that means you miscarried." R. Vol. VIII at 401. Because she believed she had recently miscarried, King's statement frightened Jim. Jim testified that when King concluded the ceremony for her father, King instructed her that "if we do not get it taken care of it can lead to sores or cancer" and that if she ever decided to have another baby it would "affect that baby also."    Id. at 403. Jim testified that King told her that either she or her next baby might die from complications. After King explained that the ceremony would take only three minutes and that, without touching her, he could

remove the bad spirit through a bamboo whistle placed against her stomach, she agreed to the ceremony.

However, during the ceremony, King placed the flute not on Jim's stomach, but, as with Quintana and Begay, into her vagina. He told Jim that she needed to have an orgasm for the ceremony to work, fondled her genitalia and her breasts, and exposed himself to her. Upset by King's actions, Jim grabbed her clothes, and King concluded the ceremony.

A federal grand jury issued a four-count superseding indictment against King in April 1998. Counts I, III, and IV of the indictment charged King with sexual abuse in violation of 18 U.S.C. §§ 1153, 2242(1), and 2246(2)(C), for his actions involving Jim, Begay, and Quintana, respectively. Count II charged King with aggravated sexual abuse of a child under the age of twelve, in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(C)-(D), for his actions involving Begay's four-year-old daughter.

At trial, each of the three women testified about their respective encounters with King. The government introduced expert testimony that in both traditional Navajo and Native American Church ceremonies it is inappropriate for a healer to view a woman's naked body or to insert objects into her vagina. However, the defense contended that King's actions were proper exercises of the traditional Navajo Sucking Way ceremony, in which a medicine man removes a foreign

object through the skin of a patient either with his lips or through a tube. King testified that he performed the ceremony on the three women, but that they were covered with a cloth during the ceremony. He denied inserting the flute into the women, claiming that the women had inserted it themselves. He further denied fondling or touching Jim, or exposing himself to her.

At the close of the government's case, the district court dismissed Count II, the allegation of aggravated sexual abuse of a child, finding insufficient evidence to submit the question to the jury. After being instructed on the three remaining counts of sexual abuse, the jury returned a verdict of guilty as to Counts I and IV (Jim and Quintana), and acquitted King of Count III (Begay). [1] The district court subsequently overruled King's post-trial motion for judgment of acquittal on Counts I and IV.

## DISCUSSION

*Sufficiency of the Evidence*

On appeal, King renews his argument that there was insufficient evidence to support his conviction on Count IV of the indictment, which alleged that he sexually abused Eugenia Quintana. In evaluating challenges to the sufficiency of

---

[1]Because the district court dismissed Count II, it renumbered the remaining charges when it submitted them to the jury. For the purposes of this appeal, however, we refer to the counts as they are numbered in the indictment.

evidence, we apply the following standard: "[E]vidence both direct and circumstantial, together with reasonable inferences to be drawn therefrom, is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Garcia-Emanuel, 14 F.3d 1469, 1472 (10th Cir. 1994) (quoting United States v. Sanders, 928 F.2d 940, 944 (10th Cir. 1991)). "We will not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict." United States v. Carter, 130 F.3d 1432, 1440 (10th Cir. 1997). This necessarily high hurdle facing a party challenging a jury verdict "reflects a deep respect for the fact-finding function of the jury." United States v. Evans, 42 F.3d 586, 589 (10th Cir. 1994) (quoting United States v. White, 673 F.2d 299, 302 (10th Cir. 1982)).

At the conclusion of evidence, the district court properly instructed the jury that to find King guilty of sexual abuse as charged in Count IV of the indictment, it must find beyond a reasonable doubt that "[t]he defendant knowingly caused Eugenia Quintana to engage in a sexual act by placing her in fear of harm to herself or to another." [2] R. Vol. XII at 730; see also 18 U.S.C. § 2242. The court then instructed the jury that:

_____

[2]The parties stipulated that King is an Indian and that the incident occurred in Indian country, the two other elements of the charged violation. See R. Vol. XII at 730.

> Sexual acts are defined to include: 1. Contact between the mouth and the penis, vulva or anus. Or, 2. Penetration, however slight, of the genital opening or anus with a finger, hand or other object. If the sexual act is of the second variety, the government must prove that the defendant caused the sexual act with the intent to abuse, humiliate, harass, degrade or arouse or gratify the sexual desire of any person.

Id. at 730-31; see also 18 U.S.C. § 2246.

Specifically, King contends that there was insufficient evidence for the jury to conclude that King threatened Quintana or placed her in fear of harm, or that he acted with the specific intent to abuse, humiliate, harass, degrade or arouse or gratify his sexual desire.

### 1. "Fear" under 18 U.S.C. § 2242(1)

While Section 2242 makes it a crime to cause "another person to engage in a sexual act by threatening or placing that other person in fear," the statute does not define "fear," other than to exclude the fear "that any person will be subjected to death, serious bodily injury, or kidnapping." 18 U.S.C. § 2242(1). As we have previously held, "[t]he definition of 'fear,' as used in 18 U.S.C. § 2242(1), is very broad." United States v. Castillo, 140 F.3d 874, 885 (10th Cir. 1998), cert. denied, 120 S. Ct. 1272 (2000). "The element is satisfied when the defendant's actions implicitly place the victim in fear of some bodily harm." Id.

As detailed above, Ms. Quintana testified that she visited King, a traditional Navajo medicine man, because of difficulty sleeping and eating, which she attributed to a lump in her chest area. She also testified that, after hearing her symptoms, King told her that she had an object inside her groin area, and that hearing this made her afraid. Quintana also testified that King told her that she would not recover if she did not allow him to remove the object. Quintana testified that while King's actions made her extremely uneasy and frightened, she obeyed King's commands to be still because of his status as a medicine man. Several witnesses testified about the status of medicine men in Navajo society and that they are blessed with spiritual powers.

We are unpersuaded by King's argument that Quintana's fear was not caused by him but was a result of her illness or affliction. Any anxiety Quintana may have felt before visiting King was compounded when he, a respected healer whom she trusted, told her that an invisible object had been placed in her groin and that she would not recover without his intervention. In short, there is substantial evidence for a rational jury to conclude that Ms. Quintana would not have agreed to King's extremely invasive actions, but for the physical and spiritual consequences she feared would occur if she did not submit to his treatment.

*2.*     *Intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person*

Sufficient evidence also supports the jury's conclusion on King's intent. Rarely is direct evidence of a defendant's intent available. However, as we have held, intent may be inferred by the trier of fact based on the circumstances surrounding the incident. See, e.g. , United States v. Norman T. , 129 F.3d 1099, 1104 (10th Cir. 1997). Furthermore, "[t]he jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts." United States v. Anderson , 189 F.3d 1201, 1205 (10th Cir. 1999).

In his testimony, King agreed that it would be disrespectful to view or to touch a woman's genitalia, or to insert an object into her vagina without her consent. While King claimed Quintana was covered by a sheet during the ceremony, Quintana testified that she was naked from the waist down. While King asserted that Quintana inserted the flute into her own vagina, Quintana testified that King probed around with the flute until he found her vagina, and then inserted the flute in all the way to her cervix. After considering the conflicting evidence, the jury was entitled to reject King's claimed defense that he was performing a traditional healing ceremony and to conclude that he was performing a sexual act on Quintana. See also United States v. Alejandro , 118 F.3d 1518, 1521 (11th Cir. 1997) ("defendant's testimony denying guilt, if

disbelieved by the jury, can be evidence that the opposite is true and can establish the elements of the offense"). Accordingly, we find sufficient evidence for a rational jury to conclude that King acted with the intent required by the statute.

*Downward Departure*

King also argues that the district court erred in refusing to grant him a downward departure in his sentence on the grounds that his behavior was aberrant and out of character. No sentencing guideline specifically addresses "aberrant behavior." However, in United States v. Jones, 158 F.3d 492 (10th Cir. 1998), we recognized that "the aberrant nature of a criminal defendant's offense conduct may properly be considered as a mitigating factor in a downward departure decision." Id. at 500. See also U.S.S.G. § 5K2.0 (allowing sentencing courts to impose a sentence outside the range established by the applicable guidelines, if "there exists an aggravating or mitigating circumstance not adequately taken into consideration by the Sentencing Commission in formulating the guidelines").

Specifically, the section of King's brief addressing his downward departure request bears the heading:

> IN LIGHT OF THE INSUFFICIENT EVIDENCE TO CONVICT
> MR. KING ON COUNT IV, THIS COURT SHOULD ORDER
> RECONSIDERATION OF THE MOTION FOR DOWNWARD
> DEPARTURE BASED ON ABERRANT BEHAVIOR.

Appellant's Br. at 17. By its own terms, this argument by King necessarily

depends on his previous argument that there was insufficient evidence to support

Count IV. Accordingly, because we have found that the jury's verdict on Count

IV has adequate support in the record, King's argument that his 1996 abuse of Jim

(Count I) was aberrant fails. [3]

---

[3]At oral argument, King's counsel maintained that his request for a downward departure did not depend on reversal of King's conviction on Count IV. He suggested that because King's Count I actions with respect to Trudy Jim were substantially more reprehensible than his previous actions with Quintana and Begay, his actions in Count I constitute a single act of aberrant behavior that differs substantially from all the other counts.

This argument was not developed in King's opening brief as is required for our consideration. See Thomas v. Denny's, Inc., 111 F.3d 1506, 1510 n.5 (10th Cir. 1997) (issues first raised at oral argument come "too late"). However, even were we to reach the argument, it lacks merit. King was convicted of two separate counts of sexual abuse (Counts I and IV), both in violation of 18 U.S.C. § 2242(1), and the district court found that a third charge of sexual abuse (Count III) was supported by a preponderance of the evidence. While the specific details of each act of abuse may vary in some degree from the others, all are violations of law that the sentencing court should consider when determining if a downward departure is warranted. See United States v. Watts, 519 U.S. 148, 151-54 (1997) (court may consider acquitted conduct for sentencing purposes). Under the circumstances, the district court properly concluded that there was no legal basis for a downward departure based on aberrant behavior.

**CONCLUSION**

For the reasons stated above, we AFFIRM King's conviction and sentence.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge